## WILLIAM DENMAN v. GUY A. JOHNSTON.

*Negligent driving—Pleading—Charge to jury—Directing verdict—*
*Damages—Attorney and client.*

1. Instructions to the jury outside of the issues made by the pleadings are improper.

2. The defendant in a negligence case is not called upon to come into court prepared to meet a charge of willful, wanton, or reckless negligence unless such charge is contained in the declaration.

3. The Court know of no statute regulating the speed at which teams may be driven in the country.

4. In actions on the case for negligence the plaintiff is bound to set out in his declaration the combination of the material facts relied on as a cause of action, and to follow up the allegation by evidence pointing out and proving the same combination of circumstances, in order to apprise the parties and the court of the precise subject of the controversy. *Batterson v. Railway Co*, 49 Mich. 184; *Smith v. Holmes*, 54 Id. 104.

5. The law, as declared in this State, casts the burden of proof upon the plaintiff, when he sues to recover damages for defendant's negligence, to show not only that the injury was so caused, but also that he himself was not guilty of any negligence which materially contributed to such injury, which facts he must ordinarily allege in his declaration.

6. If the plaintiff in a negligence case cannot set up such a combination of facts as show that he is free from negligence on his part, he must by proper allegation charge that the injury was caused by the wanton or willful negligence of the defendant, such as in law amounts to *gross* negligence, and a reckless disregard of the consequences of his neglect.

7. The term "*gross* negligence," when referred to as authorizing a recovery for a negligent injury notwithstanding the contributory negligence of the plaintiff, means an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them.

8. Where *gross* negligence, as excusing plaintiff's negligence, has been relied on in this Court, the violation of the duty has been

85 387
85 559

85 387
88 302

85 387
98 369

85 387
96 477

85 387
103 12
103 372

85 387
115 477

85 387
119 587

85 387
124 606

85 387
c128 265

85 387
e134 7143

85 387
e135 4302

85 387
142 28

85 387
157 12 09

charged in the declaration as having been wanton, willful, and reckless; citing *Battishill v. Humphreys*, 64 Mich. 514, 519; *Bouwmeester v. Railroad Co.*, 63 Id. 557; *Hughes v. Railway Co.*, 78 Id. 402; *Robinson v. Railroad Co.*, 79 Id. 330. But such violation of duty is sufficiently charged by averring that the defendant saw the plaintiff in or approaching a place of danger, and knew, or had good reason to believe, that he was not aware of the danger, and saw him in such a position in time to prevent his injury by the use of ordinary care, which he failed to make use of.

9. We have held that the mortuary tables of the expectancy of life based upon the American experience are competent to be considered by a jury in a proper case in considering the expectancy of life. These tables are embodied in our statutes, and the court can take judicial notice of their contents.[1]

10. The use of such mortuary tables in trials for negligent injuries not causing death requires great caution on the part of the trial court. The expectancy of life in such tables is based upon the lives of *healthy* persons who are of the ages indicated; and it cannot be said that a person who, prior to the injury complained of, was afflicted with hernia, which had been thereby aggravated, and who was also suffering from internal injuries, as claimed, has an expectancy of life at the age of 52 of 17 or any other number of years. The tables furnish no basis of expectancy of such a life. They do form a basis of the expectancy of life of a healthy person of that age, which is stated to be 19.49 years; but other testimony of experts would be required, in such a case, to show what the plaintiff's life expectancy would be, taking into consideration his ailments, and the effect they would probably have to shorten such expectancy. Such testimony must necessarily be problematical, but perhaps it is the best that is attainable to establish the probability.

11. If a defendant chooses to rely upon a motion to direct a verdict, which amounts to a demurrer to the evidence, he must do so absolutely, and be bound by the disposition which the court makes of the case, and he has no right (except in the discretion of the court), after a ruling upon the motion, to introduce testimony.[2]

12. How. Stat. § 9004, authorizes a party to agree with his attorney

---

[1] See How. Stat. § 4245; *Cooper v. Railway Co.*, 66 Mich. 261; *Rajnowski v. Railroad Co.*, 74 Id. 20; *Hunn v. Railroad Co.*, 78 Id. 513, 528; *Kinney v. Folkerts*, 84 Id. 617.

[2] See *Morley v. Insurance Co.*, 85 Mich. 210, and cases cited in foot-note.

for compensation, which agreement is not a material matter to be inquired into upon the trial. If the attorney presents himself as a witness, it might be the subject of inquiry as affecting his credibility on the ground of interest.[1]

Error to Kent. (Grove, J.) Argued February 13, 1891. Decided April 24, 1891.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Turner & Carroll,* for appellant, contended:

1. A foot-passenger crossing a highway is bound to keep a vigilant lookout in *both* directions from the time he enters the carriage track until the time that he emerges from it; citing *Cotton v. Wood,* 8 C. B., (N. S.) 568; *Barker v. Savage,* 45 N. Y. 191; *Brooks v. Schwerin,* 54 Id. 347.

2. In order to recover for injuries such as the plaintiff claimed, he must specify them in his declaration. He cannot allege them in a vague charge of being hurt, bruised, wounded, etc.; citing *Shadock v. Plank-road Co.,* 79 Mich. 7; and see *Schindler v. Railway Co.,* 77 Id. 154, where the cases are reviewed, and the rule laid down that no proof of negligence can be received beyond what is alleged, and that allegations of the wrong are necessary, and that the *particular* neglect of duty must be set forth.

*Norris & Norris,* of counsel for appellant, contended:

1. The ancient doctrine that a *scintilla* of evidence should be allowed to go to the jury has long since been exploded, and a wiser and better rule adopted; citing *Conely v. McDonald,* 40 Mich. 154.

2. If the evidence be not sufficient to warrant a recovery, an instruction should be given that the evidence is not legally sufficient to serve as the foundation of a verdict for the plaintiff. The test of the right to direct a verdict is whether the court would be bound to set a verdict aside as against the evidence. But this verdict cannot be founded on mere conjecture, neither will a shadow, nor a possibility, nor a mere *scintilla* stand in the way of ruling the case in favor of a party who shows a substantial right of which there is no substantial contradiction;

[1] See *Jordan v. Westerman,* 62 Mich. 170; *Wildey v. Crane,* 63 Id. 720; *Weeks v. Circuit Judges,* 73 Id. 256; *Millard v. Jordan,* 76 Id. 131.

citing *Improvement Co. v. Munson*, 14 Wall. 442; *Pleasants v. Eant*, 22 Id. 120; *Commissioners v. Clark*, 94 U. S. 284; *Griggs v. Houston*, 104 Id. 553.

3. The degree of care required of the plaintiff is a question for the court; citing *Anderson v. Boom Co.*, 57 Mich. 216; and whether there is evidence *tending* to show negligence is one of law; citing *Palmer v. Harrison*, 57 Mich. 182.

4. Even if the injury had been the result of the fault of both parties, the plaintiff could not recover; citing *Williams v. Railroad Co.*, 2 Mich. 259.

5. The defendant was engaged in his own lawful business. There was no evidence tending to show wanton or intentional wrong on his part, and there was undisputed evidence tending to show that plaintiff both proximately and directly contributed; citing *Railroad Co. v. Miller*, 25 Mich. 274; *Daniels v. Clegg*, 28 Id. 32; *Joslin v. LeBaron*, 44 Id. 160.

6. We know of no authority, either statutory or otherwise, for a judge (without evidence) to state to a jury, as a fact, what is the expectation of human life. Nor do we know of any "approved mortuary tables, recognized by our State;" certainly none pertinent to the undisputed facts of this record. There are, of course, very many mortuary tables that are used by persons having occasion to consult them. So far as our statutes recognize any, they adopt for certain special ends of the life insurance act the "American Experience Table." How. Stat. §§ 4232, 4245. This was constructed by Mr. Shephard Homans, actuary, of New York, from the actual experience of the Mutual Life Insurance Company of New York, covering 20 years, and based on 100,000 lives, from 10 to 95 years of age. Most of the English tables in use—notably the mortality experience of the Equitable Assurance Society of England, from statistics and membership from 1762 to 1829; what is known as "The Seventeen Offices' Experience," figured on 83,905 policies of insurance; what is known as the "Institute of Actuaries' Table," the experience of 20 life insurance companies, 10 English and 10 Scotch, covering 160,426 assured lives—were figured upon healthy, sound lives, that had passed the medical examination of the companies, which certainly plaintiff could not have done. So as to the Northampton, the Carlisle, and Wigglesworth tables, though not constructed on life insurance experience, yet an examination of their methods of calculation, contained in insurance and other encyclopedias, would immediately disclose their inapplicability to the undisputed condition of the plaintiff.

*Godwin, Adsit & McKnight* (*Robert M. Montgomery,* of counsel), for plaintiff, contended:

1. The statute prohibiting certain agreements between attorney and client has been in fact repealed by How. Stat. § 9004; citing *Wildey v. Crane,* 63 Mich. 720; *Hill v. Mathews,* 78 Id. 377.

2. The instructions relative to the measure of damages were within the law as laid down in the charge in *Geveke v. Railroad Co.,* 57 Mich. 597 (which was approved by this Court), and the suggestions of this Court in *Balch v. Railroad Co.,* 67 Id. 396, reading these cases together.

3. The instruction to the jury, in effect, that if the defendant discovered the position of the plaintiff in time so that the defendant could have avoided the collision, and knew or had good reason to believe that the plaintiff was unaware of defendant's approach, and defendant could have avoided the collision after discovering this by the exercise of ordinary care, he would be liable even though the plaintiff may have been negligent in being in that position, was an application of settled rules of law to the facts of this case; citing Bishop, Non-Cont. § 466; Cooley, Torts, 674; *Battishill v. Humphreys,* 64 Mich. 520; *Bouwmeester v. Railroad Co.,* 63 Id. 561; *Davies v. Mann,* 10 Mees. & W. 545; *Isbell v. Railroad Co.,* 27 Conn. 393; *Steamboat Farmer v. McCraw,* 26 Ala. 203; *Cooper v. Railroad Co.,* 44 Iowa, 138; *Morris v. Railroad Co.,* 45 Id. 30; *Isabel v. Railroad Co.,* 60 Mo. 475; *Railway Co. v. Steen,* 42 Ark. 321; *Spofford v. Harlow,* 3 Allen, 176; and, furthermore, it is not the duty of a party traveling in a highway to look back or listen for the coming of another so as to make clear the way before him; citing *Adolph v. Railroad Co.,* 76 N. Y. 533.

CHAMPLIN, C. J. The plaintiff's declaration contains two counts.

The first count alleges that, while plaintiff was traveling in a proper and careful manner upon a public highway in the township of Grand Rapids, Kent county, on the 28th of July, 1889, the defendant carelessly, wrongfully, and unlawfully drove a team of horses attached to a vehicle over him with great force and violence, and plaintiff was knocked upon the ground and grievously hurt, and a certain hernia with which he was afflicted was greatly aggravated, etc.

The second count sets forth that plaintiff was traveling in a proper and lawful manner upon the public highway, which was then and there thronged with numerous people, making noise and tumult, and defendant then and there carelessly, wrongfully, and unlawfully drove another team and vehicle at a furious pace and with great force and violence against and over plaintiff, etc., as in the first count.

Upon the trial the plaintiff introduced evidence tending to prove that the time when he received his injuries was Sunday, between 2 and 4 o'clock in the afternoon of July 28, 1889; the place was Reed's Lake, a popular summer resort about two miles from the city of Grand Rapids; and the occasion was as he was crossing the public highway in a diagonal direction from Ferris' saloon to Godfrey's. These saloons were from 160 to 180 feet apart on opposite sides of the street, which was 66 feet wide. The team driven by defendant approached plaintiff from the rear upon a brisk trot; and his testimony tended to show that the violence of the shock was such as to carry him forward a few feet, when he fell between the horses, and when they were brought to a stand he crawled out either just in front or in rear of the horses' hind feet. There were other men crossing the highway at the time, some of whom preceded and others were following plaintiff. His testimony also tended to show that there were a number of other vehicles in the street passing to and fro, but at the time of the accident the only team at that particular place was the one driven by defendant. The plaintiff's testimony also showed that north of the place where the accident occurred, and near Godfrey's, there was a cross-walk made of plank, connecting with a foot-path running along the east side of the highway.

The defendant introduced testimony tending to prove that he was driving north along the east side of the

highway; that his horses were on a walk; that as he approached Ferris' saloon he saw several persons on the stoop, among whom was the plaintiff; that he saw the plaintiff step off from the stoop and start to travel north along the side of the highway, and just at the time he reached him the plaintiff started across the street, and stepped in front of his team; that as soon as he saw the danger of a collision he pulled up his horses, and called out, "Hey, there!" but it was too late to prevent the accident; that the neck-yoke struck plaintiff, and he fell between the horses; that he stopped as soon as possible, and plaintiff crawled out from under his horses; that the place of the accident was not over 20 feet from the saloon.

The court, in his charge to the jury, instructed them correctly upon the rights and duties of travelers in a public highway, and also upon the respective theories of the parties as presented in the case by their testimony, and left the questions of fact to the jury as they should find they were established by the testimony.

Error is assigned upon those portions of his charge which read as follows:

"If the defendant discovered that the plaintiff was traveling in a course in which, if said defendant pursued the course in which he was driving, he would come in collision with the plaintiff, and knew, or had good reason to believe, that the plaintiff was unaware of his approach, and if by the use of ordinary care, after discovering this, the defendant could have prevented the injury to the plaintiff, and did not use such care for that purpose, he is chargeable with reckless injury, and the plaintiff is entitled to recover, even though the jury are of the opinion that he, the plaintiff, may have been negligent in being in that position."

Again, in speaking of the duty of the plaintiff to exercise ordinary care in entering upon the traveled part of the highway, the learned judge said:

"If he neglected to use such care, and was injured by the defendant, who was also traveling in the same highway, he cannot recover in this action, notwithstanding you should find from the evidence that the defendant was also negligent, unless you should find from the evidence that the defendant saw the plaintiff in or approaching a place of danger, and knew or had good reason to believe that the plaintiff was not aware of danger, and saw the plaintiff in such a position of danger in time to prevent, by using ordinary care, the injury to the plaintiff, and did not make use of that care for that purpose."

These instructions were outside of the issues made by the pleadings. The declaration contained no count charging defendant with willful, wanton, or reckless negligence, and defendant was not called upon to come into court prepared to meet such a charge.

The declaration alleged that, while the plaintiff was traveling in the highway in a proper and careful manner, the defendant carelessly, wrongfully, and unlawfully drove his team against him at a furious pace, and with great force and violence knocked him down. Much of the plaintiff's testimony was directed to the circumstances which tended to show that he was in the exercise of ordinary care. Although the witnesses introduced in his behalf who saw the collision testified that they did not see him look to the south before entering upon the highway or afterwards, until there was an outcry of danger, which occurred at the instant he was struck by the team, he testifies himself that he looked to the south before he entered upon the traveled portion of the road, and did not observe the team approaching; neither did he hear the team approaching, as he was "hard of hearing." The plaintiff has characterized the negligence imputed in the allegation that defendant drove his team at "a furious pace" as being careless, wrongful, and unlawful; but he has not alleged it to have been reckless, wanton, or willful.

It was held in *Carter v. Chambers*, 79 Ala. 223, that driving rapidly through a street of a city is not *per se* culpable negligence. In *Brennan v. Town of Friendship*, 67 Wis. 223 (29 N. W. Rep. 902), it was said:

"Riding upon a highway at a high rate of speed is not necessarily negligence, although it is a circumstance to be considered by the jury in passing upon the question of negligence."

And in *Crocker v. Ice Co.*, 92 N. Y. 652, the court said:

"The only proof of negligence was that the driver was driving the team on a 'lively trot.' It cannot be held as matter of law or fact that merely driving at the rate of speed stated in the streets of a city is negligence. Persons driving in the streets of a city are not limited to any particular rate of speed. They may drive slow or fast, but they must use proper care and prudence, so as not to cause injury to other persons lawfully upon the streets."

The injury in this case was received not in a city, but in the country; and we know of no statute regulating the rate of speed at which teams may be driven in the country, and no by-law of the township was introduced upon the subject.

We have held that in actions on the case for negligence the plaintiff is bound to set out the combination of the material facts relied on as a cause of action, and to follow up the allegations by evidence pointing out and proving the same combination of circumstances. The object to be accomplished is: *First*, to apprise the parties, and, *second*, to apprise the court, of the precise subject of the controversy. *Batterson v. Railway Co.*, 49 Mich. 184; *Smith v. Holmes*, 54 Id. 104. The law, as declared in this State, casts the burden of proof upon the plaintiff, when he sues to recover damages for an injury caused by defendant's negligence, to show not only that the injury

was caused by defendant's negligence, but also that he himself was not guilty of any negligence which materially contributed to such injury; and these facts he must ordinarily allege in his declaration. If he cannot set up such a combination of facts as show that he is free from negligence on his part, he must by proper allegation set up that the injury was caused by the wanton or willful negligence of defendant, such as in law amounts to gross negligence, and a reckless disregard of the consequences of his neglect.

The term "gross negligence" has been used in cases decided by this Court, and has a definite meaning, when referred to, as authorizing a recovery for a negligent injury notwithstanding the contributory negligence of the plaintiff. It means an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them.

Where gross negligence, as excusing plaintiff's negligence, has been relied on in this Court, the violation of the duty has been charged in the declaration as having been wanton, willful, and reckless. Thus in *Battishill v. Humphreys*, 64 Mich. 514, 519, the declaration charged the defendants' neglect as reckless, wanton, and malicious. In *Bouwmeester v. Railroad Co.*, 63 Mich. 557, the declaration charged the negligent act as having been wantonly, willfully, recklessly, and negligently committed. In *Hughes v. Railway Co.*, 78 Mich. 402, the declaration set forth the facts which constituted a reckless and a wanton disregard of the personal safety of the child. And see *Robinson v. Railroad Co.*, 79 Mich. 330, 331. Had the declaration in this case averred that the defendant saw the plaintiff in or approaching a place of danger, and knew, or had good reason to believe, that the plaint-

iff was not aware of the danger, and saw the plaintiff in such a position of danger in time to prevent by using ordinary care the injury to the plaintiff, and did not make use of that care for that purpose, it would have been sufficient, although it did not characterize it as reckless or wanton or willful. It would have presented an issue which is not presented by the issue as framed and tried, and, if supported by proof, would have warranted the charge given.

Not only was there no such allegation, but I can discover no testimony in the record which supports such allegation. No witness testifies that defendant saw plaintiff in a place of danger, and that he knew, or had good reason to believe, that plaintiff was not aware of the danger. or that defendant saw plaintiff in time to avoid injuring him by the exercise of ordinary care. No one of plaintiff's witnesses testifies to the time when defendant first saw plaintiff in the road. None of them saw the team until the collision was imminent. The neglect of defendant to see the plaintiff was no greater than that of the plaintiff to see the team approaching. In my opinion, neither of them was guilty of such a degree of negligence as to excuse the negligence of the other.

Error is assigned upon the charge of the court upon the subject of damages. In referring to the damages which the plaintiff would be entitled to in case he was permanently disabled by the injury received, the judge instructed the jury as follows:

"As to the disability for the future, if you find from the evidence that the plaintiff will continue to be disabled from the injuries received either permanently or otherwise, such a sum should be awarded as would constitute the present worth of the wages which the jury shall find that he will, in the future, be prevented from earning, or the depreciation in the wages. which he shall be prevented from earning, as the case may be; and this

would be ascertained by first determining the amount which the plaintiff would be prevented from earning by reason of these disabilities for each year during the time of his total or partial disability, not exceeding, however, the time of his expectancy in life, which, by the approved mortuary tables recognized by our State, is seventeen years for a person of the age of fifty-two; but you should take into account the nature and extent of the injuries, as you find them to be from the evidence; his age, and the probable impairment of his ability to earn money in the future, by reason of advancing age; and then, by discounting such sum at the rate of six per cent. per annum, you ascertain its present worth; and then adding together these several sums constitutes the present worth of these amounts. In other words, it would not be proper to take a gross sum equal to what he would expect to earn in the future, because the sum awarded plaintiff therefor, if you find he is entitled to recover, will be money in hand. Therefore it should be only such sum as would, together with the accumulations of interest, if invested, amount to what in your judgment, based upon the facts proved in the case, he might reasonably expect to earn in the future if he had not been injured, and which he was deprived of the ability to earn by the injury done him."

We have held that the mortuary tables of the expectancy of life based upon the American experience are competent to be considered by a jury in a proper case in considering the expectancy of life. These are embodied in our statutes, and the court can take judicial notice of their contents. But their use in trials for negligent injuries not causing death requires great caution on the part of the trial court. The expectancy of life in those tables is based upon the lives of healthy persons who are of the ages indicated; and it cannot be said, as was said by the trial judge in this case, that a party who, prior to the injury complained of, was afflicted with hernia, which had been aggravated by such injury, and who was also suffering from internal injuries, as claimed, had an expectancy of life at the age of 52 of 17 years, or any

other number of years. The tables furnish no basis of expectancy of such a life. They do form a basis of the expectancy of life of a healthy person of the age of 52, and such expectancy is stated in the tables to be 19.49 years; but other testimony of experts would be required to show what the plaintiff's expectancy of life would be, taking into consideration his ailments, and the effect they would probably have to shorten his expectancy. Such testimony must necessarily be problematical, but perhaps it is the best that is attainable to establish the probability.

What plaintiff would earn during the remainder of his life had he not received the injury complained of, annually, and the present worth of such sums, are questions which the ordinary jury, without special instructions as to the method of ascertaining them, are hardly competent to grapple with. In this case the court told the jury that by discounting such sums they would arrive at the present worth. But discount is not present worth. The difference, however, would be in favor of the defendant, and he cannot complain of the error if it was founded upon a correct basis of calculation as to plaintiff's expectancy of life and annual earnings.

There was no error in refusing to direct a verdict in favor of defendant at the close of plaintiff's testimony. The defendant's counsel requested the court to direct a verdict, and at the same time stated that in case it was refused he desired to introduce testimony. Such practice is not proper. If the defendant chooses to rely upon such motion, which amounts to a demurrer to the evidence, he must do so absolutely, and be bound by the disposition which the court makes of the case. But he has no right (except in the discretion of the court), after a ruling upon such motion, to introduce testimony.

The defendant's counsel had no right to inquire of the

plaintiff when a witness upon the stand concerning the arrangement which he had made to compensate his attorney for his services. The statute authorizes a party to agree with his attorney for compensation, and such agreement is not a material matter to be inquired into upon the trial. If the attorney should present himself as a witness, it might be the subject of inquiry as affecting his credibility on the ground of interest.

Other errors are assigned, but we do not deem them of importance in the disposition of the case.

The judgment will be reversed, and a new trial ordered. The defendant will recover his costs in this Court.

The other Justices concurred.