*In re* SERVICE'S ESTATE.

1. WILLS—ELECTION—ASSIGNMENTS—ATTORNEY AND CLIENT.
   The statutory right of a widow to elect to take under the
   provisions of the statute, in lieu of the terms of a will, is a
   personal right and not assignable; and where a widow, after
   assigning her rights under the provisions of a will to an at-
   torney as security for advancements and services to be per-
   formed, filed, under the advice of said attorney, her election
   to take under the statute, *held*, that the election was not
   void.

2. SAME— WIDOW'S ALLOWANCE— ASSIGNMENTS— ADVANCEMENTS.
   The allowance to a widow during a controversy over the con-
   struction of a will is made and granted for her sole benefit,
   and is not assignable; and where the payment of an allow-
   ance is in fact, though not in form, paid to her attorney, to
   whom she had assigned her rights as security for advance-
   ments and services, *held*, that the right to the allowance was
   not included in the assignment, and she received the allow-
   ance by being credited on the amount advanced.

3. SAME—ASSIGNMENTS—CONTINGENT FEES.
   An agreement to undertake litigation upon a contingent fee is
   lawful under section 11254, 3 Comp. Laws. It will be pre-
   sumed that the parties intended to enter into a lawful agree-
   ment relative to the interests of the widow in the estate,
   nothing to the contrary appearing in the case.

Error to Macomb; Erskine, J. Submitted November
9, 1908. (Docket No. 116.) Decided December 21,
1908.

Andrew Harvey, executor of the last will and testa-
ment of John Service, deceased, presented his final ac-
count in the probate court and asked for an order of dis-
tribution under the will. The probate court made an or-
der allowing the widow to take under the statute, and the
executor appealed to the circuit court. There was judg-
ment sustaining the order of the probate court, and the
executor brings error. Affirmed.

*Graves, Hatch & Wasey*, for appellant.

*William S. Jenney (Seth W. Knight*, of counsel), for appellee.

McALVAY, J.   John Service died testate in Macomb county in February, 1906, leaving a widow surviving him and no children.   His estate, consisting entirely of personal property, was appraised at the sum of $6,705.12. The only provision made for his widow in his will was a money legacy of $1,000.   The will was probated, and Andrew Harvey, the appellant, named in the will as executor and residuary legatee, qualified as executor and is still acting in that capacity.   During the administration of the estate, the widow caused to be filed in writing her election to take, under the statute of distributions of this State, the share of the estate she would have been entitled to had her husband died intestate.   She also asked for and was allowed $460 for her maintenance, which allowance was paid by the executor to her attorney.   Appellant, having administered the estate to the point of rendering his final account and making distribution of the estate remaining in his hands, filed his petition for that purpose, asking that the estate be distributed according to the provisions of the last will and testament of deceased. Upon the hearing of this petition, the probate court found that Margaret Kincaid McCallum Service, of Lennoxtown, Scotland, was the widow of the deceased, and as such had filed her election in writing as above mentioned, and ordered the estate to be distributed accordingly.   From this order the executor appealed to the circuit court of Macomb county, where the case was tried before the court without a jury.   The court made and filed his findings of fact and conclusions of law affirming the order and decree of the probate court, upon which a judgment was accordingly entered.   The case is before us upon errors assigned to some of these findings of fact and conclusions of law, and to the refusal to find as requested.

## "FINDINGS OF FACT.

" John Service died testate in Macomb county, Mich., on or about February 6, 1906, leaving an estate consisting entirely of personal property, and appraised at $6,705.12. By his last will and testament, he disposed of all of his estate by a number of legacies; the only provision in the will for his widow being a money legacy of $1,000. The will was admitted to probate in the probate court of Macomb county, and Andrew Harvey, the appellant, named in the will as executor and residuary legatee, has qualified as executor and is acting in that capacity. The decedent was married in Scotland on October 29, 1861, to Margaret Kincaid McCallum, but did not cohabit with her for more than a fortnight and left her and came to America and was a resident of Macomb county at the time of his death. The widow remained in Scotland and is still living. No children of the marriage are living.

"William S. Jenney, an attorney at law at Mt. Clemens, Mich., was retained to represent the interests of the widow by Wyllie & Aspin, her local counsel at Glasgow, Scotland, and a power of attorney, dated April 24, 1906, signed by her, was forwarded to Mr. Jenney authorizing him to act for her in her name. After the will was probated and on May 8, 1906, Mr. Jenney, having been informed by Wyllie & Aspin of the widow's poverty and her inability to meet any expenses in the matter, by letter advised them that the widow had better elect to take against the will, and proposed in that event that he recover for his services one-half of her interest in the estate, less expenses, stipulating that she would not get less than $1,000, and also offered to give Messrs. Wyllie & Aspin one-third of the one-half received by him. On May 26th following, Messrs. Wyllie & Aspin replied to this letter, stating: That the widow had difficulty in agreeing to his proposal because of her humble circumstances, her dependence on her own exertions for a livelihood, her advanced age, and the increasing difficulty in supporting herself; that she believed 'that any attempt to have the will set aside' would delay the receipt of money by her; and that, because of her need of money, she was more inclined to accept a comparatively small sum which would be payable within a few months, rather than a much larger sum which she might receive at an uncertain future time, and proposed to Mr. Jenney that he advance her the sum of $100 then and each six months thereafter,

until the matter was fully disposed of, and that he take such steps as he thought proper upon the conditions mentioned in his letter of May 8th, upon the understanding that in no event was she to receive less than $1,000. They also proposed that, if the result was successful, interest should be charged against the proportion of the fee coming to them. At this time, the widow was not informed and did not know that she would be entitled to an allowance for her support and maintenance during the progress of the settlement of the estate. On June 12, 1906, Mr. Jenney accepted this offer and forwarded to Messrs. Wyllie & Aspin $100 as the first advancement under the agreement, and at the same time, to prevent the possibility of their client settling the case without consulting her attorneys, requested an absolute bill of sale from the widow as security for 'our services, disbursements, and advancements, both past, present and future; also, as security for client's performance of the agreement contained in the power of attorney of date April 24, 1906, and subsequent correspondence.' Thereupon Messrs. Wyllie & Aspin procured from the widow an assignment in the Scotch form, purporting to be of all of the widow's interest in the estate, to Mr. Jenney, which assignment is dated June 26, 1906, and on its face assigns to Mr. Jenney 'all and whole the right, share and interest now belonging or which may hereafter belong to me (the widow) in and to the means and estate of the said John Service, whether under his will or on any other title, or in any character or in any manner of way whatsoever.' The letter accompanying it, however, stated that: 'Although the assignment is absolute in its terms, yet, nevertheless, it is truly granted in security of such sums advanced or about to be advanced by the agent.' On July 9th following, Mr. Jenney acknowledged the receipt of this assignment, stating: 'I, of course, acknowledge the assignation to be for the purpose of security only; what we call a mortgage.'

"Early in August, 1906, Mr. Jenney went personally to Scotland to take certain depositions in the case to prove the widow's marriage to decedent. While in Scotland, and on August 13, 1906, he procured from the widow another instrument, on its face assigning to him all of her right, title, and interest in the estate, with the direction to the probate court, in the order of distribution, 'to assign to the said William S. Jenney any and all property or money coming to me (the widow) from the said estate

and all of my (the widow's) right, title and interest in said estate instead of assigning the same or any part thereof to me (the widow).' At the same time he gave her a draft for $1,500, payable to his own order, and by him indorsed in blank which draft has since been paid to Messrs. Wyllie & Aspin, without the indorsement of the widow. Contemporaneous with the delivery of the assignment and draft, the widow receipted to him for the $1,500 and the $100 previously paid 'as an advancement or loan collaterally secured by two several mortgages on my interest in the estate of my late husband,' and agreed to pay 6 per cent. on these loans or any other sums advanced by him. By the term 'mortgages' she referred to the two assignments. She also at this time gave to Mr. Jenney her election in writing to take against the will, with instructions to file it in the probate court.

"On Mr. Jenney's return to America, he wrote a letter to Messrs. Wyllie & Aspin to take the place of the formal paper signed by him and mislaid when in Scotland, in which letter he says that the two assignments, although absolute in form, were given as security for services, disbursements, and advancements, both past and present and future, also for the widow's performance of the agreement contained in the power of attorney of April 24, 1906, and subsequent correspondence. On the 13th of November, 1906, Mr. Jenney, as her attorney, filed in the probate court of Macomb county the election of the widow to take against the will. He also at the same time made an application in the widow's name, to such court, among other things, for an allowance to her under Act No. 331, Pub. Acts 1905. This application for an allowance to the widow was made by the attorney in supposed compliance with the contract between the widow and himself, to secure her rights, interest, and share and means, present and prospective, in the estate. The probate court made an allowance of $460 for the maintenance of the widow, which money was paid by the executor to Mr. Jenney, who has retained the same, giving credit therefor. The widow's understanding of the two assignments made by her to Mr. Jenney was that they were given to secure him for loans or advancements made or that might be made by him to her, and that they were mortgages simply.

"The widow, in the spring of 1906, for the reasons stated in the letter of Wyllie & Aspin, hesitated at electing to take her distributive share of the estate in lieu of the legacy. She and her attorneys in Scotland were then

under the misapprehension that such election involved in some manner an attempt to set the will aside, which might or might not be successful, and which would mean delay in receiving her money, of which she was in pressing need. She did not know then that she was entitled to her support out of the estate during the progress of its settlement. She still had nearly a year within which to exercise her election, during which time she would have been fully informed as to these matters, and manifestly would have elected within the statutory period to have taken her distributive share of the estate, independently of her arrangement with her attorney. The executor, having paid all of the debts of the estate, petitioned the probate court for an order directing him to distribute the estate under and pursuant to the will, which petition was denied, and the executor ordered to distribute to the widow, pursuant to the election, such share of the estate as she would be entitled to in case decedent died intestate. Andrew Harvey, individually and as executor, has appealed to this court from this order so far as the same directs payment to the widow of any different sum than the will gives her, and so far as the order recognizes the validity of the widow's election.

## "Findings of Law.

"As one cannot accept and reject the same instrument, the widow is put to an election whether she will accept the provisions made for her in her husband's will, or, in lieu thereof, take under the statute. If she dissents from the will, the statute requires that it be done by writing and filed in the proper court within the statutory period. If she accepts it, no formal action is necessary on her part. Wills are presumably made with this right in view, and a dissent therefrom involves no reflection on deceased or disrespect of his memory. The will speaks from the death, not from the time of its execution, and changes may have occurred in the affairs of the testator which would render it unwise for the widow to accept the instrument. As was said by the Supreme Court in *Re Andrews' Estate*, 92 Mich. 454 (17 L. R. A. 296):

" 'Pecuniary advantages are rarely waived, and it will not do to rest the construction of a statute which confers a substantial right upon purely sentimental considerations.'

"This case is barren of sentiment in this respect. The

legacy was not to her as wife, but to her as cousin.  She was not honored with his name in the bequest.  Shortly after the marriage, he had left her, and, while she has struggled on into old age in poverty, he was enjoying a fair competence in this country.  After his death, his executor, although possessed of the marriage certificate, denied the marriage, and, by show of contest at least, contributed to the necessity of her making the contract in question.

"The widow did not assign, nor attempt to assign, to Mr. Jenney, her right to elect.  Had she so attempted, the assignation, I apprehend, would be void.  If void, it would not bind her, nor invalidate her subsequent formal election.  While the arrangement complained of may have influenced her in making the election, no one can say that she may not have so elected had no arrangement been made.  The courts cannot analyze the reason that led her to this action.  It would have been strange if she had not done what she did.  The terms of the contract between the widow and her attorney are of no moment here, except in so far as they may bear upon her right to elect.  The question is not whether the agreement was oppressive or against public policy.  If the client has ventured into an improper bargain with her attorney in reference to his remuneration, or security therefor, this might defeat a cause of action based on this agreement; but it would not operate to bar a recovery by the client on the original claim.

"The allowance made to the widow for her support during the settlement of the estate was for the sole benefit of the widow, and not payable to any one else.  It is against public policy that it be the subject of speculation, and it is doubtful if it can be assigned, especially where it has not even been applied for at the time the assignment is made.  Whether in this case the assignment could be construed to cover the allowance subsequently made to the widow, and whether, if so construed, such instruments would be valid to that extent, I do not decide, as I do not consider that necessary to the disposition of this case.  See *Hackley* v. *Muskegon Circuit Judge*, 58 Mich. 454, 457.

"It follows that the widow is entitled to her distributive share of the estate as specified in the order of the probate court appealed from, and judgment will be entered accordingly.

"BYRON R. ERSKINE, Circuit Judge."

In this court the argument of the appellant, Andrew Harvey, is confined to the claim that the election of the widow of John Service to take against the will is invalid:

"*First.* Because this election was made after the widow had assigned all of her interest in the estate, and when, consequently, there was no basis for an election; the right to elect being nonassignable, and not therefore passing to the assignee. .

"*Second.* Because the contract, pursuant to which the election was made, and but for which the election would not have been made, is against public policy and therefore void."

1. As between the widow and her attorney, there can be no doubt but that the assignments, the substance of which are given in the findings of the court, were given as security for his advances and services. The parties at the time so considered and acted upon them, and still insist that such was their construction. It is not urged that in ordinary cases in this State such agreements are unlawful, but that, because the assignments appear to be absolute in their terms, and because the election of a widow to take against the will is not assignable, and because the election was made in pursuance of a contract against public policy, such election is void. We agree that this statutory election of a widow is a personal right and is not assignable, but we do not find from this record that the election was made pursuant to a contract. It was not mentioned in the so-called assignments. Her attorney in his letters advises her to make such election, but appellant's contention is not based upon such advice. If the right of election is not assignable, we cannot infer that it was intended to be, or was, included in the assignments. The same may be said of the allowance to the widow by the probate court, which is claimed in fact, though not in form, to have been made to her attorney. Although this allowance was paid into the hands of the attorney, she in fact received it by receiving credit on the amount already advanced by him. We agree with the circuit court that the question as to the widow's allowance is controlled

by *Hackley* v. *Muskegon Circuit Judge*, 58 Mich. 457.

2. What we have said in relation to the right of election by a widow against the will of her husband being a personal right and not assignable, in large part disposes of appellant's second contention, that the election was invalid because made pursuant to a contract, which is against public policy, and but for such contract would not have been made. We do not construe the power of attorney, assignments, receipts, and other writings, which show the contractual relations into which these parties entered, to be against public policy and invalid. Under our statutes an agreement to undertake litigation upon a contingent fee is lawful. The legislature has exercised its prerogative to make it so. 3 Comp. Laws, § 11254; *Wildey* v. *Crane*, 63 Mich. 724. As above stated, these agreements do not in terms include the right of election. We cannot infer or presume that the parties intended to enter into an unlawful agreement. The presumption is to the contrary. There is nothing in the record to warrant our conclusion that the widow made this election under the contract, or that but for the contract the election would not have been made. Her attorney advised her in her interest relative to her rights under our statutes, of which she was ignorant. This was his right and his duty. We are satisfied from this record that she would have received no information as to her rights from the executor and appellant, who was personally interested in having the estate distributed under the will, and who, as far as the record shows, is the only person who has been dissatisfied with the order and decree of the probate court.

The evidence in the case supported the findings of fact by the court, and his conclusions of law therefrom were correct. We find no error in the case.

The judgment is affirmed, with costs of both courts against Andrew Harvey, appellant, personally.

GRANT, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.