FOLEY *v.* GRAND RAPIDS & INDIANA RAILWAY CO.

1. CHAMPERTY AND MAINTENANCE—ATTORNEY AND CLIENT—WITNESSES.

In an action for personal injuries wherein it appeared that a witness and the attorneys were to have a percentage of the amount recovered, the cause of action was not affected, since the common-law rule as to champerty between attorney and client does not prevail in Michigan, and the agreement alone is void between laymen.

2. TRIAL—EVIDENCE—MEDICAL AUTHORITIES.

It is error to read medical authorities to a witness on cross-examination.

3. CARRIERS OF PASSENGERS—ALIGHTING FROM TRAINS—DIRECTING VERDICT.

Plaintiff's testimony being subject to different inferences, a verdict should not be directed because it could be inferred that he knew when he alighted from defendant's train that he was not at the station.

Error to Cheboygan; Shepherd, J. Submitted April 14, 1909. (Docket No. 45.) Decided May 26, 1909.

Case by James Foley against the Grand Rapids & Indiana Railway Company for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*James H. Campbell*, for appellant.

*Benjamin & Quay*, for appellee.

BLAIR, C. J. This is an action on the case to recover damages for personal injuries alleged to have been sustained by plaintiff when getting off a passenger train at Kegomic, a place about two miles north of Petoskey, on the 8th day of September, 1906. Kegomic is the junction point of the railroad to Harbor Springs with the main line running north to Mackinaw City. There are a tannery and dwelling houses of its employés on the east side of the railroad tracks. There are a shed and gravel platform or walk just north of the junction of the tracks. In switching a train from the main track to the Harbor Springs track, it was necessary to turn two switches; the one nearest Petoskey being 75 feet from the station stopping point. In the case of the train upon which plaintiff was riding, it was the duty of the brakeman to throw these switches. It was not customary to announce the station until this train had started over the switches after they had been properly set. Foley spent the evening at Petoskey, and left there on the Harbor Springs train at 11:30 p. m. The train stopped, as usual, a short distance south of the switch, while the brakeman went ahead and turned the switch to let the train pass from the main track to the Harbor Springs track. When the train stopped for the switch, four or five persons, employés of the tannery, got off; Foley among them. He was the last to get off. He claims that the train started up while he was getting off the step, and that he fell in such a way that the wheels ran over his right foot and cut it nearly off. It was amputated just above the ankle the same night.

It is claimed, and there was evidence which tended to show, that the brakeman called "Kegomic" before the stop was made for the switch; also that the conductor told Foley that it was Kegomic. It appears from the testimony that one Sullivan, a witness for plaintiff, had an arrangement with him whereby he was to procure attorneys, help him in the prosecution of his suit, and pay the expenses of the suit, in consideration whereof he was to receive 10 per cent. up to $5,000 of the amount recovered. It also appears that the attorneys employed for plaintiff were to receive a percentage of the amount recovered as their compensation. A medical witness, who was on the train with plaintiff and attended him immediately after the accident, testified that, in his opinion, plaintiff was intoxicated at that time. For the purpose of discrediting this opinion, plaintiff's counsel was permitted to read to the witness, as part of his cross-examination, an extract from the "International Reference Book of Surgery." Plaintiff recovered a verdict, and defendant has removed the record to this court for review.

Defendant's counsel argue in their brief, among other things, that the contracts between plaintiff and Sullivan and with his attorneys were champertous and void, and the suit should be dismissed for that reason. The common-law doctrine of champerty, as applied to agreements between attorneys and clients, does not prevail in this State. *Wildey* v. *Crane*, 63 Mich. 720 (30 N. W. 327); *Denman* v. *Johnston*, 85 Mich. 387 (48 N. W. 565); *In re Service's Estate*, 155 Mich. 179 (118 N. W. 948). Even if the rule is still in force as to agreements with laymen, we think the better rule is that the contract is only void as between the parties, and does not affect the obligation of the defendant to the plaintiff. 6 Cyc. pp. 880, 881, and cases cited in notes.

It was reversible error, under our previous decisions, to permit the plaintiff's counsel to read from the medical book. *Marshall* v. *Brown*, 50 Mich. 148 (15 N. W. 55); *Hall* v. *Murdock*, 114 Mich. 233 (72 N. W. 150).

Counsel for defendant further insist that the court erred in refusing to instruct a verdict in its favor, on the ground that plaintiff knew, when he got out on the platform of the car and before he attempted to get off, that the train had stopped at the switch, and not at the station. While plaintiff's testimony is subject to the inference deduced by defendant's counsel, we do not think the court erred in refusing to instruct the jury that such was the only reasonable inference to be drawn therefrom.

We do not deem it necessary to consider the other points presented, since they are not likely to arise upon another trial.

The judgment is reversed, and a new trial granted.

Grant, Montgomery, McAlvay, and Brooke, JJ., concurred.