NORRIS *v.* DETROIT UNITED RAILWAY.

1. STREET RAILROADS—EXCAVATIONS—STREETS—NEGLIGENCE.

Where plaintiff fell into an excavation of the defendant railway, in the streets of the city of Detroit, and sustained severe injuries, the trial court did not commit error in instructing the jury, in substance, that, if the rain and storms that might be expected at that time of the year put the street out of repair and rendered it dangerous, defendant would be chargeable with negligence, but, if they found that a storm of unusual severity, or one that might not be expected under ordinary circumstances and conditions, came up, then it would be something that human foresight could not prevent and would be an extraordinary visitation and the defendant would not be chargeable with negligence.[1]

2. EVIDENCE—MORTALITY TABLES—PREVIOUS DISEASE.

The mortality tables were improperly received in evidence in a personal injury action in which plaintiff admitted she had a weak heart and had suffered from goitre or what was described as "Graves Disease," which was almost cured and where her condition was aggravated by the accident.[2]

3. SAME—PERMANENT INJURIES.

Upon testimony of plaintiff's physician that the injury to her ankle was of a permanent nature, the court was right in submitting to the jury the matter of damages.

4. SAME—COMPROMISE AND SETTLEMENT—AGENCY.

A question asked of defendant's claim agent, whether or not he had been authorized to settle the case, was clearly incompetent. But where the court charged the jury that the remark of counsel was not for their consideration and that the matter of compromise could not be considered at all, the court on error would not hold the error prejudicial, especially when the question was not answered.

---

[1] On the question of liability of street railways for defects in tracks or street, see notes in 52 L. R. A. 448; 15 L. R. A. (N. S.) 840.

[2] On admissibility of mortality tables in evidence in action for personal injuries, see note in 40 L. R. A. 553.

5. SAME—APPEAL AND ERROR.

    The court, furthermore, will not reverse a case on error for argument of counsel not shown by the record but presented by affidavits, the trial court returning that he did not so understand the alleged objectionable argument.

6. SAME—TRIAL—DAMAGES.

    Future damages are limited to such as the evidence makes reasonably certain will necessarily result from the injury sustained, and it was error to advise the jury that they might award such sum as would compensate plaintiff for the injuries she would be likely to suffer in the future.

Error to Wayne; Des Voignes, J., presiding. Submitted June 16, 1916. (Docket No. 148.) Decided December 21, 1916.

Case by Myrtle Ida Norris against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Corliss, Leete & Moody* and *William G. Fitzpatrick,* for appellant.

*William M. Mertz,* for appellee.

KUHN, J. The plaintiff, an unmarried woman about 24 years of age, brought the action to recover damages resulting from her falling into an excavation made by the defendant in the course of the construction of its tracks on Grandy avenue north from Gratiot avenue in the city of Detroit. On a former trial the plaintiff obtained a verdict, and the judgment entered thereupon was reversed and a new trial granted because of the errors in the admission of testimony. This decision is reported in 185 Mich. 264 (151 N. W. 747). On the new trial a judgment for the plaintiff in the sum of $2,055 was obtained, and the case is again brought here by writ of error.

The facts surrounding the injury are so fully set forth by Mr. Justice STONE in the previous opinion of

this court that it will be unnecessary to repeat them here.

It is argued in appellant's brief that there was no proof of negligence, and that therefore the court should have directed a verdict for the defendant. Upon the argument of the case, however, counsel for defendant and appellant stated that he was of the opinion that the record did raise questions which should have been submitted to the jury. With this we agree, as the proofs in support of plaintiff's claim differed but little from those introduced on the previous trial.

In the previous opinion it was said:

"If the jury should find, as matter of fact, that the storm was an unusual and extraordinary one, and one which the defendant could not, in the exercise of ordinary care, reasonably expect, we think the question then should have been clearly put to the jury whether the defendant had had a reasonable time in which to restore the lights before the accident happened; and they should have been instructed that if it had not had a reasonable time in which to restore the lights, in case the storm was of such a nature, then there would be no liability. Whether it was such a storm as it might reasonably expect and provide for at that season of the year was also a question for the jury. The idea is embraced in the charge of the court in *Beattie* v. *City of Detroit*, 137 Mich. 319, at page 324 (100 N. W. 574, at page 576), where the charge of the trial court was approved by this court:

"'Did they do all that prudence and foresight would demand of them? In other words, if the rain and storms that might be expected, if you believe that they might be expected at that time of the year, would put that street out of repair and render it dangerous, then, gentlemen of the jury, in my opinion, negligence would be chargeable against the city; but if you find that a storm of unusual severity, or a storm that might not be expected under ordinary circumstances and conditions at that time of the year, came up, then it is something human foresight cannot see or prevent, and that would be an extraordinary visitation of the elements, and the city * * * would not be, in such a case, chargeable with negligence.'

"And the rule of reasonable time in which to remedy the defect would apply."

The trial judge on the new trial practically submitted the question in issue in the language approved in *Beattie* v. *City of Detroit, supra.*

The next assignment of error relates to the admission of the mortality tables. It appears that the plaintiff, before the accident involved in this litigation, was suffering with a goiter, or what is known as "Graves Disease." Plaintiff herself admitted this in her testimony and said that before the accident she had a weak heart because of the goiter, and claimed that she was almost cured, and that her condition was aggravated by the accident. The trial judge withdrew from the jury any question of permanent injury so far as the goiter was concerned, but did submit to the jury the question of permanent injury to her ankle. Dr. Zaeger testified that in his opinion the injury to the ankle was permanent, and that there would be no improvement in the condition caused by plaintiff's fall. We are of the opinion that this testimony was sufficient to warrant the trial judge in submitting the question of permanent injury to the jury; but, in view of the fact there is no question that the plaintiff was not in average physical health and vitality at the time of her disabling injury, we are constrained to hold that it was error to receive the mortality tables and submit them for the consideration of the jury. In the absence of any testimony to show how much her expectancy of life was impaired by the pre-existing pathological condition, the tables could furnish no safe guide as to the probable duration of the disabling injury.

In *Denman* v. *Johnston*, 85 Mich. 387 (48 N. W. 565), this court in speaking of the mortuary tables said:

"But their use in trials for negligent injuries not causing death requires great caution on the part of the trial court. The expectancy of life in those tables is based upon the lives of healthy persons who are of the ages indicated; and it cannot be said, as was said by the trial judge in this case, that a party who, prior to the injury complained of, was afflicted with hernia, which had been aggravated by such injury, and who was also suffering from internal injuries, as claimed, had an expectancy of life at the age of 52 of 17 years, or any other number of years. The tables furnish no basis of expectancy of such a life. They do form a basis of the expectancy of life of a healthy person of the age of 52, and such expectancy is stated in the tables to be 19.49 years; but other testimony of experts would be required to show what the plaintiff's expectancy of life would be, taking into consideration his ailments, and the effect they would probably have to shorten his expectancy. Such testimony must necessarily be problematical, but perhaps it is the best that is attainable to establish the probability."

See, also, *Clinton* v. *Laning*, 61 Mich. 355, at page 361 (28 N. W. 125).

In *Wilkins* v. *City of Flint*, 128 Mich. 262 (87 N. W. 195), in which case the tables were admitted where it was claimed that the plaintiff, a woman, was not a person in the average health, it was said:

"It is now claimed that the plaintiff was not a woman of average health at the time of the accident, and that the tables should have been excluded, under the authority of *Denman* v. *Johnston*, 85 Mich. 387 (48 N. W. 565). Had the fact that she was not an ordinarily healthy person been admitted or undisputed, the tables would have had no bearing; but, being disputed, they were admissible, to be used or not by the jury, according to their conclusion upon the question of fact."

If, in the case before us, it had appeared that there was any dispute about the question of whether or not the plaintiff was an ordinarily healthy woman, then

that question would have been for the jury, and the mortality tables would be admissible for them to use if they should find that she was an ordinarily healthy woman. But, as we have said, there is no question but that plaintiff was not what could be called an ordinarily healthy person at the time of her injury, and therefore the mortality tables should not have been admitted, and it must be said to be prejudicial error for the court to have submitted them to the jury for their consideration.

During the examination of defendant's claim agent, Jansen, he was asked by plaintiff's counsel whether he had been authorized to settle the case. Objection was made, and the question was not answered, and the court immediately charged the jury in the following language:

"Gentlemen, that remark, of course, is not for your consideration at all, and I trust and have no doubt you will give heed to the rulings of the court in relation to the testimony which should go in or not go in. It is a rule of law that a matter of compromise is nothing for the jury to determine one way or the other. There is nothing here as to such a fact at all; and, even if there was, it could not be considered by you, because the law favors compromises, and for that reason they do not allow it to be permitted to enter into the evidence in any way. Counsel asked the question, and the court ruled that the witness should not answer. Exception has been taken to that as being prejudicial, and you will remember that under no circumstances have you the right to assume or presume anything in the answer to that question. If you do so, you violate your oaths."

The question was clearly improper, and Jansen should not have been asked it; but we are not prepared to say that it was prejudicial error in view of the instructions which the trial judge immediately gave to the jury.

It was sought to show by affidavits that during the argument of plaintiff's counsel to the jury improper statements were made. The record does not show what these statements were, as the stenographer made no minutes of them, and the trial judge stated at the time that he had not understood the statement to have been what was claimed for it by defendant's counsel. We cannot review this alleged error, for this court in reviewing errors of the trial court must be governed by the record and the statements of the trial court, rather than the claims of counsel as to what occurred at the trial. *Pinkerton* v. *Bromley,* 128 Mich. 236 (87 N. W. 200) ; *Spacek* v. *Schaub,* 140 Mich. 212 (103 N. W. 546) ; *Hews* v. *Hews,* 145 Mich. 247, 255 (108 N. W. 694).

In charging the jury on the question of permanent injuries and disability, and future damages growing out of the impairment and disability of plaintiff's ankle, the court said:

"If you find for the plaintiff, it will be your duty to award such a sum as will compensate her for whatever pain and suffering and inconvenience she has experienced in the past by reason of her injuries, and for such as you may find from the testimony she is likely to experience in the future; also, for the loss of wages, if any in the past, and what she is likely to lose in the future, if any. * * *

"Now, you may take into consideration whatever handicap you may find she has been or may be caused by this injury, in obtaining her rest and the performance of her usual duties, and such loss of enjoyment to her in the usual routine of her life as you may find her injuries have or may cause. * * *

"A person who receives an injury has but one right of action. When he comes before a jury once, that is the end of his case, and if she or he comes before a jury he or she is entitled to receive for injuries in the past and which may be endured in the present."

It is urged that these portions of the charge are

erroneous, in that they do not follow the rule announced by this court in *Brininstool* v. *Railways Co.,* 157 Mich. 172, 180 (121 N. W. 728); *Kethledge* v. *City of Petoskey,* 179 Mich. 301, at pages 311, 312 (146 N. W. 164); and *Matthews* v. *Lamberton,* 184 Mich. 493 (151 N. W. 563). The rule is well settled by these cases that future damages are limited to such as the evidence makes reasonably certain will necessarily result from the injury sustained, and the instructions should have been given in the language there approved.

The judgment must be reversed, and a new trial granted, with costs to the appellant.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.