TAYLOR v MATHEWS

Opinion of the Court

1. Negligence—Recreational Use—Summary Judgment.

Summary judgment for defendants was proper where plaintiffs pleaded only ordinary negligence and admitted that their minor son, who was injured when he dove into shallow water in defendants' gravel pit, paid no consideration to defendants for the recreational use of defendants' premises (MCLA 300.201).

2. Negligence—Trespassing Children—Age—Realization of Risk.

The age of a trespassing child in a negligence action is important only as it bears on whether he does, and can be expected to, realize the risk on the premises upon which he is trespassing; absent a presentation of undisputed facts, there is no fixed age, as a matter of law, at which a child does and can be expected to realize any particular risk and the best rule is to judge each case upon its own merits and to give plaintiffs an opportunity to present their case.

3. Negligence—Trespassing Children—Question of Fact.

Questions of fact were raised by the pleadings, depositions, and answers to interrogatories which showed that defendants knew children were continually intruding upon their gravel pit, partially filled with water, for the purposes of diving into the pit and swimming in it; that the gravel pit condition was dangerous; that the use of a diving board at the pit was dangerous; that the board was allowed to remain at the gravel pit and that defendants knew or should have known that

References for Points in Headnotes

[1] 57 Am Jur 2d, Negligence § 45.
[2] 57 Am Jur 2d, Negligence § 364 et seq.
[3] 57 Am Jur 2d, Negligence § 72.
[4] 57 Am Jur 2d, Negligence § 124.
[5] 57 Am Jur 2d, Negligence § 125.
[6] 57 Am Jur 2d, Negligence § 102 et seq.
[7] 57 Am Jur 2d, Negligence § 110.
[8, 10] 57 Am Jur 2d, Negligence § 36 et seq.
[9] 57 Am Jur 2d, Negligence § 209 et seq.

children were using the board; that defendants knew that the water level in the pit was lower in September, when plaintiffs' minor was injured by diving into the pit; that defendants had the ability to avoid resulting harm by complaining to the sheriff whose officers patrolled the area, by removing the diving board and by taking means to prevent its being placed there again, by fencing the area, and by instructing their watchman to deny the trespassing children access to the area; and that defendants failed to use such care and diligence to avert the threatened danger to the children diving into the pit, although it would seem to the ordinary mind that it must have been apparent that the result was likely to prove disastrous to another.

### DISSENT BY McGREGOR, P. J.

4. NEGLIGENCE—GROSS NEGLIGENCE—TRESPASSERS.

*A landowner who diligently endeavors to keep trespassers off his land is not liable to a trespasser who wilfully disregards no-trespassing signs, fences, and barricades, and who then, by wilful and positive acts, negligently injures himself; the rule of strict liability, while proper for one who engages in a dangerous activity, should not apply to one who has performed no affirmative acts and whose only act of "negligence" is to be the unfortunate owner of land which others seek to come upon, regardless of the positive acts which the owner has taken to prevent such trespassing.*

5. NEGLIGENCE—GROSS NEGLIGENCE—TRESPASSING CHILDREN.

*Defendants were not guilty of gross negligence by failing to prevent a trespassing 15-year-old boy from diving from a diving board into their water-filled gravel pit where defendants had erected blockades, posted no-trespassing signs, and had built fences to prevent plaintiff and those like him from trespassing on their property, defendants did not know that the water was shallow under the diving board at the pit, the plaintiff had been a swimmer since the 5th grade, had taken swimming and diving lessons, had been taught how to dive into shallow water, had been warned by his father previously that gravel pits were dangerous, and, on the date of his injury, plaintiff dove from the diving board into the water without first ascertaining or making any effort to ascertain the depth of the water and, in so doing, struck the bottom of the pond, causing his injuries.*

6. NEGLIGENCE—WILFUL MISCONDUCT—ELEMENTS.

*Wilful and wanton misconduct exists where the actor has inten-*

tionally done an act of an unreasonable character in disregard of a risk known to him, or so obvious, that he must be taken to have been aware of it, and so great that injury was highly probable; the act is usually accompanied by a conscious disregard of known consequences.

7. NEGLIGENCE—TRESPASSING CHILDREN—PONDS.

Pools and ponds on private property, maintained for legitimate reasons, are "common things" which by themselves are not dangerous, but are made dangerous because trespassing children use them.

8. NEGLIGENCE—TRESPASSING CHILDREN—PONDS—LANDOWNER'S DUTY.

A landowner had no duty to drain a partly-filled gravel pit, even though there was a possibility that a trespassing child might be injured by swimming in or diving into the pit.

9. NEGLIGENCE—PRIOR OCCURRENCES—DIFFERENT CAUSE.

The fact that prior drownings had occurred in defendants' water-filled gravel pit had no bearing on whether defendants knew that a board, used as a diving board, was potentially dangerous in that it was placed over shallow water.

10. NEGLIGENCE—TRESPASSING CHILDREN—DUTY TO WARN.

Defendants had no duty to warn a 15-year-old boy that the water in their gravel pit was shallow or that he might injure himself if he dove into the pit, because defendants were not responsible for the level of the water and the boy, who had had swimming and diving lessons, either knew or should have known of the dangers of diving into shallow water.

Appeal from Genesee, John W. Baker, J. Submitted Division 2 October 13, 1972, at Lansing. (Docket No. 10522.) Decided April 25, 1972. Leave to appeal denied, 387 Mich 799.

Complaint by William Taylor, for himself and as next friend of Delmar Taylor, and by Louise Taylor against Harvey C. Mathews, Earl L. Mathews, Harry E. Mathews, and Benjamin F. Mathews, and Irene C. Earle, for negligence. Summary judgment for defendants. Plaintiffs appeal. Affirmed in part, reversed in part, and remanded with instructions.

*Weinstein, Kroll & Gordon, P. C.,* for plaintiffs.

*Gault, Davison & Bowers* (by *Guy H. Hill*), for defendants.

Before: McGREGOR, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. This cause of action results from injuries sustained by plaintiffs' minor son when he dove from a board attached to a tree and struck his head on the bottom of a gravel pit. The pond is located in Genesee County and owned by defendant Irene C. Earle. The area has been under lease since February 1963, to defendants Harvey C. Mathews, Benjamin F. Mathews, Harry E. Mathews, and Earl L. Mathews, doing business as Mathews Gravel Company. Earl L. Mathews is now deceased.

The mishap took place on September 19, 1965, when Delmar Taylor, then 15 years of age, accompanied by three companions, went to the abandoned pit to swim. The pond had not been used for its intended purpose of a gravel pit for a number of years but was frequently used as a recreational swimming place for more than 25 years.

On September 18, 1968, suit was started in the Circuit Court for Genesee County charging the defendants with negligence. On May 20, 1970, defendants moved for summary judgment contending plaintiffs failed to state a cause of action. The motion was founded upon MCLA 300.201; MSA 13.1485, which is set out below:

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking,

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sightseeing or other similar outdoor recreational use, with or without permission, against the owner, tenant or lessee of said premises unless the injuries were caused by the *gross negligence* or *wilful and wanton misconduct of the owner, tenant or lessee.*" (Emphasis supplied.)

The trial court reserved its decision and allowed plaintiffs 30 days to file an amended complaint. Plaintiffs amended by adding Count II to their complaint which alleged gross negligence and wilful and wanton misconduct by defendants which caused injuries to Delmar Taylor.

The main allegations of Count II[1] of plaintiffs'

---

[1] Amended complaint:

"20. That the willful reckless misconduct and gross negligence of the defendants consisted of the following acts and/or omissions:

"(a) That said defendants knew or should have known of the unsafe conditions of the gravel pit and areas used for swimming, of the shallow areas as well as deep areas, and failed to warn those persons who they allowed to use said premises, to-wit, your plaintiffs' minor.

"(b) That defendants failed to provide adequate supervision, signs, fences, or other safety devices which may reasonably inform persons who come upon said premises, that the premises was *[sic]* not fit for use for diving and swimming.

"(c) That defendants failed to erect and maintain a fence or barricade around the excavation site in accordance with the Michigan statutes as such case made and provided, as well as other negligent acts and/or omissions all of which were the proximate cause of plaintiff's sustaining injuries and damages.

"(d) That the defendants had knowledge of the dangerous situation which required the exercise of ordinary care and diligence to avert harm to other persons, such as plaintiff, and failed to exercise said ordinary care.

"(e) That the defendants were able to avoid the resulting harm to plaintiff and others who may come upon the premises by the exercise of ordinary care and diligence and the use of means at hand, establishing barricades, posting guards and other means of patrolling the premises and prohibiting the use of the premises by persons such as the plaintiff.

"(f) That defendants omitted to use such care and diligence to avert the danger which did then and *[sic]* exist when to the ordinary mind it was apparent that failure to use said ordinary care and diligence would cause injury to others, such as the plaintiff.

"(g) That the defendants did in fact cause or allow said artificial condition to exist upon said land within their control, and had actual knowledge that children and others came upon said premises.

"(h) That the defendants knew or should have known that the risk

amended complaint were (1) that defendants maintained a gravel pit which contained water on a particular portion of the property; that the level of the water of the gravel pit varied during different periods of the year; that the gravel pit was used by youngsters and others to swim in; that there was a diving board placed on a tree which extended over the water, which was used by the youngsters to

involved, not being readily apparent to those other than defendants, did involve an unreasonable risk of death or serious bodily harm to such children and others.

"21. That by reason of the age of the plaintiff and other children who did in fact use said premises, and because of their youth would not readily discover the dangerous conditions or realize the risk involved in the use of said premises or in coming within said area made dangerous by its condition.

"22. That in fact the use to the possessor of the property involved herein, of maintaining the condition, and the burden of eliminating the dangers are slight compared with the risk to those persons upon the premises, such as the plaintiff, and that knowing all of this defendants failed to exercise reasonable care to eliminate the danger or otherwise protect the children.

"23. That defendants allowed to be constructed and maintained a large gravel pit, allowed to accumulate therein great amounts of water with sandy beaches, allowed to be constructed and maintained a diving board and other swimming facilities, thereby enticing and attracting the general public to the premises for use as a swimming area, and, as such, was an attractive nuisance which was, in fact, dangerous to use as such and that defendants failed to warn the general public thereof, or take the necessary steps to prevent the general public and plaintiffs' minor from using the same.

"24. That defendants did jointly and severally have the duty to operate said gravel pit in a safe and proper manner to prevent the area from becoming an attractive nuisance and to protect those persons such as your plaintiff who came upon the premises from being injured as a result of negligent acts and/or omissions and willful and reckless misconduct of defendants, as well as the grossly negligent acts and/or omissions of the defendants.

"25. That as a result of the defendants negligent acts and/or omissions and willful and reckless misconduct of defendants, as well as the grossly negligent acts and/or omissions of the defendants, their maintenance of an attractive nuisance, and their breach of duties, plaintiffs' minor, Delmar Taylor, while in the process of diving from a diving board constructed and/or maintained by the defendants herein, struck his head and back on the bottom of the pit on a shallow ledge in the vicinity of said diving board, thereby causing him to sustain severe and permanent injuries, including but not limited to severe fractures of various cervical vertebrae, as well as other related injuries."

dive from; that the maintenance of the gravel pit and the permitting of the diving board to remain in place and to be used constituted a dangerous condition which required the use of ordinary care and diligence to avoid an injury to one of the youngsters using the same; and further that all of these facts were known to the defendants; (2) that defendants were capable of averting the injury to the plaintiff by ordinary care in using the means available to them; and (3) that defendants' failure to use such care resulted in the injury to the plaintiff and that defendants were aware of such possible injury.

In considering the motion for summary judgment, the trial court had before it the pleadings, answers to interrogatories, and depositions of three of the named defendants, together with six depositions of witnesses including the plaintiff Delmar Taylor.

Upon renewal of defendants' motion, the trial court rendered an opinion striking Count I of the amended complaint and granted summary judgment (miscalled an accelerated judgment) for the defendants on Count II of the amended complaint. From that ruling, and the court's refusal to grant a rehearing, plaintiffs appeal.

Plaintiffs raise the following issue on appeal to this Court:

Have the plaintiffs set forth sufficient facts to state a cause of action in their amended complaint?

As to Count I of plaintiffs' complaint charging defendants with ordinary negligence, the trial court's dismissal in favor of defendants is upheld because plaintiffs admit there was no consideration paid by plaintiffs to defendants for the recreational use of defendants' premises, MCLA 300.201;

MSA 13.1485, and because our Supreme Court has ruled in the case of *Heider v Michigan Sugar Company,* 375 Mich 490 (1965), that the statute is applicable to minors.

We now come to the vital question of whether Count II of plaintiffs' complaint when considered with the depositions and answers to interrogatories previously mentioned, presents sufficient grounds to entitle plaintiffs to a jury trial on plaintiffs' claim that defendants were guilty of gross negligence or wilful and wanton misconduct.

2 Restatement Torts, 2d, § 339, p 197 provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

One of the opinions for reversal of *Genesee Merchants Bank & Trust Company v Payne,* 381 Mich 234, 242–243 (1968), states as follows:

"Since original section 339 was adopted and promul-

gated by the American Law Institute that section has been broadened beyond 'young' children. 2 Restatement Torts (Second), Appendix (1966), advises under § 339 at p 129:

" 'This section has been changed from the first Restatement in the following respects:

" '1. By eliminating the limitation to "young" children. There seems now to be general agreement that the age of the child is important only as it bears on whether he does, and can be expected to, realize the risk. There are now a considerable number of decisions in which the rule stated has been applied to children over the age of 13 years:' (Here follow some four pages of recent citations)."

Among these citations appear the following:

"17 years * * *

"The question was considered at length in *Hoff v Natural Refining Products Co.,* 38 NJ Super 222; 118 A2d 714 (1955), with the conclusion that the question is not whether the child is to be classified as 'young,' but whether he is, and may be expected to be, too young to appreciate the risk; there is no fixed age limit."

The statute MCLA 300.201; MSA 13.1485 permits plaintiffs to recover in this action provided defendants are guilty of gross negligence or wilful and wanton misconduct.

Gross negligence or wilful and wanton misconduct has been defined to exist when the following conditions are present:

"The elements necessary to characterize the injury in the case at bar as wantonly or wilfully inflicted are:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to

prove disastrous to another.'" *Willett v Smith,* 260 Mich 101, 104 (1932); *McLone v Bean,* 263 Mich 113, 115 (1933); *Gibbard v Cursan,* 225 Mich 311, 322 (1923).

Defendants assert that plaintiffs have failed to state in their pleadings or establish under the answers to the interrogatories and depositions sufficient facts to raise a valid question of gross negligence.

Summary judgment herein was granted by the trial court as to Count II of plaintiffs' complaint under GCR 1963, 117.2. In 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 360, 362, it is stated under authors' comments:

"In negligence cases, even though there may be no dispute as to the quantitative or physical facts, summary judgment will almost always be inappropriate because the qualitative issue of whether defendant exercised reasonable care will be in dispute and must be left for the jury, unless on the undisputed physical facts a judge would say that a directed verdict would be required—which is to say that there really is no negligence issue for the jury. In such cases summary judgment has been allowed in negligence cases and should be. See 3 Barron & Holtzoff, Federal Practice and Procedure, § 1232.1 [p 106].

\* \* \*

"It has been said that the test is the same as that used in deciding whether to grant a directed verdict or judgment notwithstanding the verdict. See 3 Barron & Holtzoff, Federal Practice and Procedure, § 1234 at p 133 (numerous cases cited at note 75). If the record as a whole is such that reasonable minds could not differ, there is no issue and summary judgment should be granted. The idea is useful, but it must be applied with appreciation for the fact that the motion for summary judgment is made at a time when there is no evidence, so to speak, and before the record has been made. The motion for summary judgment has to be decided on the basis of verified forecasts of what the evidence will be.

"This does not mean that the slightest doubt or possibility of conflict in the evidence makes summary judgment improper. Rather it enjoins caution. And the test more carefully stated would be whether the kind of record which might be developed, within the limits indicated by the pleadings and the affidavits or other material supporting and opposing the motion for summary judgment, interpreted to give the benefit of any reasonable doubt to the opposing party, would leave an issue upon which reasonable minds might differ or upon which a directed verdict would be proper."

In reviewing the pleadings, answers to interrogatories, and the depositions, we acknowledge that the facts as claimed by plaintiffs and defendants in certain particulars are in dispute. We relate here what appears to us to be some of the pertinent facts:

Harry Mathews, one of the defendants, stated in his deposition that he considered all gravel pits to be dangerous. Harvey Mathews stated in his deposition that they had hired a watchman for the premises to protect the machinery and equipment, but he was not told to keep persons away from the gravel pit swimming area. Two of the defendants stated that they had known of a drowning or drownings at the gravel pit in the past. Further, the defendants stated that they knew that the level of the water in the gravel pit was lower in late summer than in June or July. They attributed this fact to the dry summers, to evaporation, and the level lowering in the Flint River which affected the level of water in the gravel pit. The defendants assert in their depositions that they posted the property with no-trespassing signs, erected fences around the property, and put cables across the entrance to the gravel pit. However, the depositions of the five boys and girls who frequented the gravel pit for swimming and diving in

June and July of 1964 and the summer of 1965, when plaintiff Delmar Taylor used the gravel pit, stated that they saw no signs or fences present and no cables barring entrance to the property. They further stated that sheriff's deputies visited the gravel pit often and they were never told by the officers that they were not to dive in or swim there. Nor did any of the defendants, their employees or agents who were, during this period of time, working at a gravel pit nearby and using the road that the plaintiff and others used to get to the subject gravel pit, ever tell any of the boys or girls that were deposed that they were not to use the gravel pit. All during this period of time the diving board remained in its usual position according to the depositions of the youths and was not removed.

The deposition of Harry Mathews, one of the defendants, shows in part as follows:

"*Q.* Going back to when you first took over that property, did you ever have occasion to go on the property?

"*A.* Yes.

"*Q.* For what purpose would you go over there?

"*A.* Walk around it.

"*Q.* What would be your purpose for walking around it?

"*A.* Well, if maybe some day we would need gravel, I would look for gravel.

"*Q.* Did you ever see other people on that property?

"*A.* Yes.

"*Q.* They weren't associated with the company?

"*A.* They weren't associated.

"*Q.* On how many occasions?

"*A.* A number of occasions.

"*Q.* All summer long, every summer didn't you?

"*A.* Yes.

"*Q.* What would these people be doing there?

"*A.* Swimming, parking.

"*Q.* Picnicking and what not?

"*A.* Yes.

"*Q.* Did you ever see families there with children?

"*A.* No, I don't recall.

"*Q.* Any adults?

"*A.* Yes.

"*Q.* Teenagers?

"*A.* Kids, yes."

The deposition of Harvey Mathews, one of the defendants, states in part:

"*Q.* Now prior to 1965, had you had occasion to be on the premises of that particular gravel site?

"*A.* Where the accident was?

"*Q.* Yes.

"*A.* I been on there several times.

"*Q.* What would be the purpose of your going on there prior to September 1965, to be more specific, what did you go there for?

"*A.* I go by there everyday, to go home for dinner.

"*Q.* Well did you see any activities going on there?

"*A.* Yes.

"*Q.* What type of activities?

"*A.* People swimming, this and that.

"*Q.* Picnicking?

"*A.* I wouldn't say they were or not.

"*Q.* Were there families there, youngsters and parents?

"*A.* I didn't notice any.

"*Q.* Teenagers?

"*A.* I suppose there were some, I don't know.

"*Q.* There were people but you can't identify their age group or anything?

"*A.* No.

"*Q.* Was that generally used during the summer for that purpose?

"*A.* They swam in the summertime.

"*Q.* And how long did that practice go on that you know of?

"*A.* Probably 30 years.

*   *   *

"*Q.* Did you ever go there on a Sunday in the summer?

"*A.* Yes.

"*Q.* Did you ever see cars lined up by Stanley Road?

"*A.* Yes.

"*Q.* How would people get over to the gravel pit? Would they walk over?

"*A.* There is gravel pit on both sides.

*   *   *

"*Q.* Did you ever see any diving boards around the area?

"*A.* Yes, I seen a diving board there.

"*Q.* How long * * * when is the first time you saw that diving board?

"*A.* I don't know, a long time ago.

"*Q.* Was it the first time you first leased the property?

"*A.* I think they had the diving board there when we moved over there.

"*Q.* That would be 1963?

"*A.* Somewhere around there.

"*Q.* When is the last time you saw the diving board there?

"*A.* I don't know.

"*Q.* Do you know how it got there?

"*A.* Probably kids."

In the deposition of Benjamin Mathews, one of the defendants, it is stated in part as follows:

"*Q.* Were you aware prior to 1965 of people using the gravel pit area south of Stanley Road that you had the license to?

"*A.* Yes.

"*Q.* All right. And for what purpose was it being used?

"*A.* They was in there swimming.

*"Q.* When is the first time you recall anybody being there swimming?

*"A.* Way back.

*"Q.* Back when?

*"A.* Well, far as I can remember.

*"Q.* How long—would that go back prior to 1963?

*"A.* Yes, it would go way back before that.

\* \* \*

*"Q.* Based on your own knowledge, how long was it used as a swimming area?

*"A.* The best of my knowledge, it would be at least 20 years or longer.

\* \* \*

*"Q.* Okay. During the time you would be in the office prior to 1965, did you see people on your way to work or on your way home from work or going about the yards see people in the gravel pit area south of Stanley Road?

*"A.* Going home from work I would see them there swimming.

*"Q.* Did you ever do anything to stop them from swimming?

*"A.* No.

*"Q.* Did you ever complain to the police?

*"A.* I think my brother did.

*"Q.* Did you?

*"A.* No.*"

The other witnesses, Cheryl Wadsworth, Pamela M. Heit, Grant A. Walter, Karen K. Patterson, and Kenneth L. Heit, whose depositions were taken by the defendants, testified that children of all ages frequented the area in the summer and swam in the gravel pit; that they would wave to the defendants' employees who were operating equipment and trucks back and forth on Stanley Road and that, in fact, on some occasions defendants' employees would stop and have their lunch in the area and watch the children swimming;

that they waved to the employees of defendants regularly when they were in the area and it is obvious that defendants' employees knew the area was being used by children.

In order to dispose of the issue presented, it is necessary for us to interpret MCLA 300.201; MSA 13.1485. This statute was originally enacted by 1953 PA 201 and amended in 1964 to extend the non-liability provisions against claims of one gratuitously entering land for the purpose of "camping, hiking, sightseeing or other similar outdoor recreational use". 1964 PA 199, § 1.

Since its enactment, there have been only two reported cases dealing with the statute. In *Heider v Michigan Sugar Company, supra,* the Court ruled five to three in favor of the defendant landowner. There were three opinions with no opinion receiving more than three signatures of the Justices. In *Heider* there was no claim of gross negligence or wilful and wanton misconduct and the terms were not defined. See *Gross Negligence in Michigan—How Gross Is It?,* 16 Wayne L Rev 457, 472 (1970).

The other case, *Magerowski v Standard Oil Company,* 274 F Supp 246–248 (WD Mich, 1967), was a wrongful-death action to recover for the death of a nine-year-old boy who drowned while fishing from defendant's dock without permission. Defendant made a motion to dismiss plaintiff's count of gross negligence. The court therein defined gross negligence or wilful and wanton misconduct as defined in *Willett v Smith, supra* and cited 2 Restatement Torts, 2d, § 339, hereinbefore referred to. The court then ruling on the defendant's motion to dismiss plaintiff's count of gross negligence stated as follows:

"[2] A landowner in Michigan is not *per se* immune

from liability to a child injured by an open and natural condition.

"In *Lyshak v City of Detroit,* 351 Mich 230 (1958), Justice TALBOT SMITH in a landmark opinion, set forth the general principles which Michigan courts must follow in analyzing the rights and duties of landowners to trespassing children. Although not specifically deciding the issue, Justice SMITH indicated quite strongly that a distinction 'between the mere condition of premises (a child falls into a natural pond) and a dangerous condition on the premises caused by the active intervention, the affirmative acts of the owner (the child is carelessly run down by the owner's horse and buggy)' is a fiction which should not be indulged in, since after frequent repetition courts begin to believe them, and thus employing them, reach inequitable results. 351 Mich at 244.

"He stated the real basis of liability of a landowner to a trespassing child as follows:

" 'The community has an interest in the life of a child. The preservation of that life is a proper factor to be weighed against a landowner's right to the exclusive possession of his land and the use he makes of it. Conduct which unreasonably jeopardizes that life is offensive to our society and the fact that the child is a trespasser is only one of the elements to be weighed by the jury in its historic scales.' 351 Mich at 244–245.

"Justice SMITH recognized that an arbitrary rule such as the one defendant advocates is much like a mousetrap, easy to get into but hard to get out of.

"In *Trespassing Children,* 47 Calif L Rev 427, at 458 (1959), after observing that many courts have attempted to establish certain definite categories of conditions which trespassing children, as a matter of law, can be expected to understand, such as the danger of drowning in water, Prosser concluded:

" 'The soundness of such arbitrary rules as to what children may always be expected to comprehend may be open to question. The impressive number of cases of dead children, attesting their failure in fact to appreciate these risks, is sufficient in itself to cast some doubt on the validity of the assumption.'

"Defendant contends that even if it owed a duty to plaintiff's decedent, its breach does not constitute gross negligence.

"[3] Gross negligence has been defined to exist when the following conditions are present: '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. *Willett v Smith,* 260 Mich 101 [1932]; *McLone v Bean,* 263 Mich 113, 115 (1933); *Tien v Barkel,* 351 Mich 276 (1958); *Slocum v Pennsylvania RR Co* (CA No 4670, WD Mich, Sept. 9, 1966); *Brinks v C & O R Co* [398 F2d 889 (CA6, 1968)].

"[4] There is sufficient evidence in the record to establish defendant knew children used its premises and in the exercise of ordinary care could have prevented them from using its facilities. Plaintiff is entitled to have this issue submitted to a jury."

We determine that in view of the fact that 2 Restatement Torts, 2d, § 339, has been revised to eliminate the limitation to "young children", it is now generally accepted that the age of the child is important only as it bears on whether he does, and can be expected to, realize the risk.

There are tort cases from other jurisdictions that allow recovery for injuries to trespassing children up to 16 years of age.[2] We are constrained

---

[2] *Hendricks v Peabody Coal Company,* 115 Ill App 2d 35; 253 NE2d 56 (1969). This case was very similar to the instant case which involved a boy, 16 years, 5–1/2 months of age, who was injured when he dove into a strip mine area that was filled with water, as a result of which he apparently broke his neck when his head hit the sand bottom. The jury rendered a verdict for the plaintiff and against the defendant, Peabody Coal Co. The verdict and judgment for plaintiff was affirmed on appeal.

*Martinez v C. R. Davis Contracting Company,* 73 NM 474; 389 P2d 597 (1964). This case involved a tort action for the wrongful death of the plaintiff intestate, a child of the age of 14 years, 5 months. The boy drowned attempting to cross an artificial pond.

to rule, absent a presentation of undisputed facts, that there is no fixed age at which a child does and can be expected to realize any particular risk, as a matter of law.[3] We believe the best rule is to judge each case upon its own merits and in the instant case until the plaintiffs have been given the opportunity to present their case, a proper result cannot be assured.

We are constrained to rule that a trial record might well be developed under the pleadings, depositions, and answers to interrogatories showing (1) that defendants knew children were continually intruding upon the limited area of land belonging to defendants, *i.e.,* the gravel pit, for the purposes of diving and swimming in; that the gravel pit condition was dangerous; that the use of the diving board was dangerous; that it was allowed to remain at the gravel pit and that the defendants knew or should have known that it was being used by the children; that the level of the water in the gravel pit was lower in September when the occurrence took place than in the early summer; (2) that defendants had the ability to avoid resulting harm by complaining to the sheriff whose officers patrolled the area; by removing the diving board and by taking means to prevent its being placed there again; by fencing the area and by instructing

*Cicero State Bank v Dolese & Shepard Co,* 298 Ill App 290; 18 NE2d 574 (1939). This case involved a child of the age of 14 years, 1 month who drowned while on the premises of the defendant. There was an artificial water hole owned by the defendant and plaintiff's decedent fell into the water and drowned.

[3] Unless the judge can say from the undisputed evidentiary facts that all reasonable men would agree that the plaintiff, Delmar Taylor, whose age was 15 years at the time of the occurrence did or could have been expected to realize the risk involved in diving into the gravel pit, the issue must be submitted to a jury. As evidence of the fact that not all reasonable men would so agree, references are made to the cases cited in footnote 2 above, and the case of *Hoff v Natural Refining Products Co, supra.*

their watchman to deny the children access to the limited area in question; and (3) that the defendants omitted to use such care and diligence to avert the threatened danger to the children (using the gravel pit to dive into), when considering all the facts, it would seem to the ordinary mind it must have been apparent that the result was likely to prove disastrous to another.

The Supreme Court has indicated that negligence and gross negligence, being questions of fact rather than law, are best left to the determination of the jury, *Ingram v Henry,* 373 Mich 453, 457 (1964), particularly in the doubtful case, *Tien v Barkel,* 351 Mich 276, 283 (1958), from which we take and apply this passage:

"What negligence case—ordinary or gross—is doubtful and what such case is not will always burden and perplex lawyers and judges. This is so since the controversy turns not upon applicable rules of law but upon their application to the facts. True, it will be said—just as it was when *Carver's* opinion [61 Mich 584 (1886)] arrived threescore and 10 years ago—that this rule addressed to 'cases of doubt' is in itself one of doubt and that it leaves the boundary between jury verdict and commanded verdict in an approximate state of uncertainty. We agree, yet deplore not. The complaint is inherent in negligence law and supplies the underlying reason for respective functions of judge and jury in negligence cases. We shall never attain that certainty of a 'slot for every case' precisianists demand, and judges will not aid the cause of truth by acting or speaking otherwise."

We determine that at this point in the proceedings, the issues presented under Count II of plaintiffs' amended complaint are issues of fact which permit plaintiffs to present their proofs in the case on the merits. *Beardsley v R. J. Manning Company,* 2 Mich App 172 (1966); *Durant v Stahlin,*

374 Mich 82 (1964); *Anderson v Gene Deming Motor Sales, Inc,* 371 Mich 223 (1963); *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 124 (1868).

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion. Costs to abide final result.

VAN VALKENBURG, J., concurred.

McGREGOR, P. J. *(dissenting).* Plaintiff alleges that defendants herein are guilty of gross negligence because they failed to prevent the plaintiff, a 15-year-old boy, from trespassing on defendants' property, despite the fact that defendants had erected blockades, posted no-trespassing signs, and built fences to prevent plaintiff and those like him from trespassing on defendants' property.

How my colleagues can find that a question of gross negligence exists with respect to one who has exercised more than what is legally termed "ordinary care" is beyond me.

They hold that an owner of land, who diligently endeavors to keep trespassers off his land, is liable to a trespasser who wilfully disregards no-trespassing signs, fences, and barricades, and who then, by wilful and positive acts, negligently injures himself. Such a rule of strict liability, while proper for one who engages in a dangerous activity, has no place in our system of jurisprudence for those who have performed no affirmative acts and whose only act of "negligence" is to be the unfortunate owner of land which others seek to come upon, regardless of the positive acts which the owner has taken to prevent such trespassing.

As to the specific fact situation here, it is readily apparent that the plaintiff was not an immature infant of tender years, but a fifteen-year-old boy

who had been to this gravel pit previously (about
ten times in 1964 and about ten times in 1965). He
had been a swimmer since fifth grade, and had
taken swimming and diving lessons. Furthermore,
plaintiff had been taught how to dive in shallow
water and had been warned previously by his
father that gravel pits were dangerous. There was
no testimony in the depositions that the defend-
ants knew or should have known that the water
was shallow under the diving board.

The pond with which we are concerned here was
an old abandoned gravel pit which had not been
used as a gravel pit for many years. This pond,
located quite some distance from any public roads
or access, had been used for many years by the
public as a swimming area, despite efforts by the
defendants to discourage such use. From time to
time defendants erected road blockades and put up
no-trespassing signs. A fence existed at one time
but had been knocked down by persons unknown
and was not rebuilt. Defendants had also at-
tempted to block the paths leading from the road
to the beach area, with piles of sand and with a
chain stretched across the entrance to a pathway
leading back to the pond.

On the date of his injury, plaintiff went to the
pond for recreational swimming. He swam across
the pond and reached shore a few feet from the
point where the "diving board" projected out into
the water. Plaintiff dove into the pond without
first ascertaining or making any effort to ascertain
the depth of the water and, in so doing, struck the
bottom of the pond, causing his injuries.

My brothers conclude from these facts that
there arises a question of gross negligence on the
part of the defendants.

The exact circumstances of gross negligence

have troubled more than one court; however, there is no question in my mind that there cannot be a question of gross negligence when a defendant has not engaged in a dangerous activity and has exercised that degree of care which a reasonable man would exercise in like or similar circumstances.

Dean Prosser states as follows regarding gross negligence:

"As it originally appeared, this was very great negligence, or the want of even scant care. It has been described as a failure to exercise even that care which a careless person would use. Several courts, however, dissatisfied with a term so nebulous, and struggling to assign some more or less definite point of reference to it, have construed gross negligence as requiring wilful misconduct, or recklessness, or such utter lack of all care as will be evidence of either—sometimes on the ground that this must necessarily have been the intent of the legislature. But it is still true that most courts consider that 'gross negligence' falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind. There is, in short, no generally accepted meaning; but the probability is, when the phrase is used, *that it signifies more than ordinary inadvertence or inattention, but less than conscious indifference to consequences; and that it is, in other words, merely an extreme departure from the ordinary standard of care."* (Emphasis added.) Prosser on Torts (3rd Ed), § 34, p 187.

"Gross negligence", as it is used in Michigan, was defined in the case of *Gibbard v Cursan,* 225 Mich 311, 319 (1923). The Supreme Court said:

"In the ordinary case of negligence, if the plaintiff has been guilty of negligence, contributing to the injury for which the action is brought, he cannot recover. It is to avoid this rule and to excuse contributory negligence of a plaintiff that the doctrine of gross negligence is usually invoked.

"When will gross negligence of a defendant excuse contributory negligence of a plaintiff? In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury. Strictly, this is the basis of recovery in all cases of gross negligence. 20 RCL p 145. Such gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or. wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule. Other misconduct, different in kind, is also generally and incorrectly known as gross negligence, as we shall see later. *Richter v Harper,* 95 Mich 221 [1893]; *Kelley v Keller,* 211 Mich 404 [1920]; *Fike v Pere Marquette R Co,* 174 Mich 167 [1913]; *Knickerbocker v Detroit Railway Co,* 167 Mich 596 [1911]; *Buxton v Ainsworth,* 138 Mich 532 (5 Ann Cas 146) [1904]." (Emphasis in original.)

This excerpt was quoted with approval in *LaCroix v Grand Trunk Western R Co,* 379 Mich 417, 423 (1967).

Thus, it is apparent that gross negligence is not applicable to the case at hand, for the negligence of the defendant (if any at all) was prior to the accident involved, in that he failed to make the premises safe.

If the plaintiff is to prevail it must be on the grounds that the conduct of the defendant was "wilful and wanton". In *Gibbard, supra,* the Supreme Court also defined the terms "wilful" and "wanton". The Court said:

"If one wilfully injures another, or if his conduct in doing the injury is. so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence— is different in kind." *Gibbard, supra,* 320.

The Court then went on [p 321] to quote the case

of *Atchison R Co v Baker,* 79 Kan 183; 98 P 804; 21 LRA NS 427 (1908):

"One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not."

In *LaCroix v Grand Trunk Western R Co, supra,* 427, the Supreme Court said,

"We conclude that *Gibbard's* definitions of gross negligence and wanton and wilful misconduct are the applicable common law in Michigan today."

Thus, the act required to predicate liability upon wilful and wanton misconduct is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him, or so obvious, that he must be taken to have been aware of it, and so great that injury was highly probable. It is usually accompanied by a conscious disregard of known consequences. See also Prosser on Torts (3d Ed), § 34, p 188, 2 Restatement Torts, 2d, § 500, p 587.

Not only does defendants' conduct not come within the scope of gross negligence, but, as the defendants were not carrying on a dangerous activity, it is doubtful from the facts set forth in the parties' depositions whether defendants are guilty of even ordinary negligence.

Pools and ponds on private property, maintained

for legitimate reasons, have consistently been
found to be "common things". These objects are
not, by themselves, dangerous, but are made so
only because of their use by trespassing children.
*Peninsular Trust Co v City of Grand Rapids,* 131
Mich 571 (1902); *Graves v Dachille,* 328 Mich 69
(1950).

In *Graves, supra,* pp 74–75, the Court quoted
with approval cases from Mississippi and Ken-
tucky:

" 'Scattered over the length and breadth of the land
are innumerable ponds and lakes, artificial and natural;
and occasionally a boy or man loses his life while
wading, or bathing, in such body of water. If, as a
matter of law, the owners of fishponds, millponds, gin
ponds, and other artificial bodies, wherein it is possible
that boys may be drowned, can be held guilty of action-
able negligence unless they inclose or guard same, few
will be able to maintain these utilities, and to our
minds an intolerable condition will be created.' *Thomp-
son v Illinois Central R Co,* 105 Miss 636, 651; 63 So
185; 47 LRA NS 1101 [1913].

" 'Throughout the annotations it is pointed out, with-
out exception, that pools and ponds maintained for
legitimate purposes do not create such attractive nui-
sances as will entail liability upon the maintainer
thereof if an infant is drowned or injured by entering
therein, since the maintained condition was not *ipso
facto* dangerous, but only because of the use of it made
by the trespassing infant.' *Puckett v City of Louisville,*
273 Ky 349, 355; 116 SW2d 627 [1938].

"Numerous holdings in this jurisdiction are in accord
with the law just above quoted and are controlling of
decision in the instant case. See *Hargreaves v Deacon,*
25 Mich 1 [1872]; *Kaumeier v City Electric Railway Co,*
116 Mich 306 (40 LRA 385, 72 Am St Rep 525) [1898];
*Peninsular Trust Co v City of Grand Rapids,* 131 Mich
571 [1902]; *Stark v Muskegon Traction & Lighting Co,*
141 Mich 575 (1 LRA NS 822) [1905]; *Habina v Twin
City General Electric Co,* 150 Mich 41 (13 LRA NS

1126) [1907]; *Preston v Austin,* 206 Mich 194 [1919]; *LeDuc v Detroit Edison Co,* 254 Mich 86 [1931]."

While the plaintiff in the instant case did not drown, the holding that a landowner is not required to drain ponds on his land is equally applicable here. Further, the fact that prior drownings had occurred in this particular pond has no bearing on whether the defendants had notice that the diving board was potentially dangerous. It might be added further that, here, it was not the diving board which was the dangerous condition, but rather the act of diving into the shallow water.

Plaintiff alleges that the shallow water was defendants' responsibility and that defendants had a duty to warn plaintiff that the water was shallow. This contention is patently absurd. Defendants are no more "responsible" for the condition of the shallow water than they are responsible for the amount of rain that falls or the heat of summer, which evaporated some of the water. Furthermore, just as there is no duty to warn plaintiff that he might drown if he swims in a pond (or, for that matter, a lake or a swimming pool), there is similarly no duty to warn plaintiff that he might injure himself if he dives in shallow water. The average fifteen-year-old boy who has had swimming lessons and diving lessons is, or ought to be, fully apprised of these dangers.

In *O'Keefe v South End Rowing Club,* 64 Cal 2d 729; 51 Cal Rptr 534; 414 P2d 830; 16 ALR3d 1 (1966), a case almost identical to the case at bar, the California Supreme Court stated the following [pp 741–746]:

"New section 339 [2 Restatement of Torts, 2d, § 339, p 197] declares: 'A possessor of land is subject to liability for physical harm to children trespassing thereon

caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an *unreasonable* risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' (Emphasis added.)

"As comment b to section 339 emphasizes, this doctrine imposes on the possessor only a 'limited obligation to the child, falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself.' (Accord, *Garcia v Soogian* [1959], *supra,* 52 Cal 2d 107, 112; 338 P2d 433). Whether or not such an obligation or duty should be imposed, moreover 'depends upon a number of variable factors. The question of liability must be decided in the light of all the circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved without giving due consideration to the effect of all the factors in a particular situation.' *(Id.* at p 110 of 52 Cal 2d; 338 P2d at p 435.) With these rules in mind we turn to the record before us.

"Plaintiff's evidence is generally meager, and on certain points borders on a failure of proof. It is barely adequate to support an inference that defendant had reason to know, through past observations, that children were likely to trespass on its premises and pier for the purpose of swimming and diving. But assuming that inference could legally be drawn, it would nevertheless relate only to high school youths in their middle teens such as plaintiff and his companions, for there is not a shred of evidence that infants or other young children

were ever known to trespass on defendant's property
and dive off its pier.

"This limitation dictated by the facts is crucial, for
clause (b) of section 339 of the Restatement speaks of
dangers to 'such' children, referring back to clause (a)
and the children who the possessor 'knows or has
reason to know' are likely to trespass. Under clause (b),
*therefore,. the precise question presented here is
whether defendant should be charged with the expecta-
tion that high school youths in their middle teens
would fail to realize the risk involved in diving off its
pier.* As Dean Prosser succinctly puts the matter, 'It is
not enough that the presence of the child may be
expected. *There must also be unreasonable danger to
him if he comes.* If the condition is not one from which
any such danger is reasonably to be anticipated, there
is no negligence in failure to protect him against it, and
no liability.' (Italics added.) (Prosser, *Trespassing Chil-·
dren* [1959], 47 Cal L Rev 427, 452.) *Certainly there is
always some degree of danger that because of thought-
lessness or bravado a youth of plaintiff's age may dive
off a pier without first ascertaining the depth of the
water below, but that danger does not appear to have
been an unreasonable one on the facts before us.* This is
not a case where, for example, a pier over apparently
uniformly deep water is rendered unsafe for diving by a
shallow, submerged object known only to the land-
owner. Here defendant's pier extended over a sloping
beach, and there was nothing from which users of the
pier could justifiably conclude that the surrounding
bottom of the bay did not likewise vary in depth. We
cannot conceive of high school youths in their middle
teens failing to realize that at least out to a certain
point on such a pier the water below remains too
shallow for safe diving. On the facts here shown, plain-
tiff failed to satisfy the condition of clause (b) of section
339. (See *Garcia v Soogian* [1959], *supra,* 52 Cal 2d 107,
112–113; 338 P2d 433; *Herrera v Southern Pacific Ry Co*
[1961], 188 Cal App 2d 441, 448–449; 10 Cal Rptr 575.)
(Emphasis added.)

"The evidence demonstrates, moreover, that plaintiff
had actual knowledge and appreciation of the danger.
The condition of clause (c) of section 339 is fulfilled only

when the injured child did not in fact 'realize the risk involved.' *The ability to appreciate danger varies, of course, with the age of the child and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented.* [Citations.]' *(Garcia v Soogian* [1959], *supra,* 52 Cal 2d 107, 112; 338 P2d 433.) As Dean Prosser explains, 'The one basic reason for a rule which distinguishes trespassing children from trespassing adults is the inability of the child to protect himself against the peril which he encounters. If that reason does not exist, it has been generally agreed that the whole policy of the special rule fails with it. *The courts have been very firm in their insistence that if the child is in fact fully aware of the condition, understands and appreciates the danger which it carries, and is quite able to avoid it, he stands in no better position than any adult with similar knowledge and understanding.'* (Prosser, *Trespassing Children* [1959], 47 Cal L Rev 427, 461.) (Emphasis added.)

"The most obvious fact is plaintiff's age. Although we have laid down no definite age limit beyond which the rule of section 339 cannot apply, the age of the child remains an important element in the total picture of each case. 'What might constitute an attractive nuisance to a 7-year-old child would be immaterial as applied to a 14-year-old high school student.' *(Giddings v Superior Oil Co* [1951], 106 Cal App 2d 607, 612; 235 P2d 843.) Beyond the age of 14, cases allowing recovery have involved such concealed or unusual dangers as high-voltage electricity or dynamite caps. (See, *e.g.,* Prosser, *Trespassing Children* [1959], 47 Cal L Rev 427, 439–442.) 'As the age of the child increases, conditions become fewer for which there can be recovery under this rule, until at some indeterminate point, probably beyond the age of sixteen, there are no longer any such conditions.' (Rest 2d Torts, § 339, com c, p 199.) As noted at the outset, plaintiff was just three months short of 16 years of age at the time of the accident. He was in the second half of his sophomore year in high school, and was receiving passing grades in all his courses. His mother agreed that he was 'healthy' and 'normal and active in every way.' Manifestly, we are

not dealing here with a plaintiff such as the 18-year-old deaf mute with the mental capacity of a child of 6, involved in *Harris v Indiana General Service Co.* (1934), 206 Ind 351; 189 NE 410.

"Nor was plaintiff a novice in the arts of swimming and diving. He had been swimming for some three or four years prior to the accident, and had received swimming and diving lessons in high school. His diving experience at school was off the side of a pool, and it would be unreasonable to assume his instructor did not warn him of the dangers of hitting bottom. On this important question, moreover, we need not indulge in speculation: plaintiff agreed on the witness stand that he 'knew' that 'if you dove into shallow water that that was the wrong thing to do'; he admitted he had 'always' known this fact, *i.e.,* from 'early life.'

"Finally, plaintiff's knowledge of the actual diving conditions at defendant's pier was extensive. He admitted having dived off that same pier some 10 or 15 times over a period of three or four months, doubtless under varying conditions of weather and tide. On the day of the accident he dived off the pier three or four times, but not always off the same side; he did not recall which side he dived off first. On the witness stand he answered in the affirmative the question, 'you dove off both sides of the pier before you took the dive that ended up in your accident. Is that right?' Even more importantly, plaintiff also answered in the affirmative the question, 'you knew how deep the water was then at the place where you dove at the time of your accident, is that right?' Plaintiff agreed that he 'knew' that the depth of the water was 'somewhere between five and six feet,' and testified that at the time of the accident he was about 5 feet 6 inches tall.

"On these facts we find persuasive precedent in *Garcia v Soogian* (1959), *supra,* 52 Cal 2d 107; 338 P2d 433. There, a girl 12 years and 8 months old was injured about 8 o'clock one evening when she unsuccessfully attempted to jump over a stack of prefabricated building panels. In holding that she failed to make out a case for recovery under the rule of section 339 of the first Restatement of Torts, we reasoned 'the panels containing windows were heavy and were firmly

stacked a considerable distance from the street in such a manner that the glass could be reached only at the top of the piles, 24 to 30 inches from the ground. The chance was slight that a child of plaintiff's age would fail to see the glass or appreciate what risk was presented, and there is no evidence that plaintiff was of less than average intelligence for her age. It may be, as plaintiff in effect testified, that, because it was getting dark, she did not see the glass before jumping, but defendants could not reasonably be required to foresee that there was any substantial likelihood that a normal child of more than 12 would not appreciate the danger of jumping over a large pile of building materials when darkness prevented sufficient perception of the nature of the obstacle.'

"*Here, as in Garcia, 'the chance was slight that a child of plaintiff's age' would fail to 'appreciate what risk was presented.' Indeed, plaintiff actually knew he was diving in generally shallow water and knew what risks he was incurring by so doing.* Those risks were not eliminated merely because plaintiff was fortunate enough to have made several previous dives without striking bottom. Moreover, although the accident took place shortly after midday, the water appears to have been opaque and the bottom not discernible beyond the edge of the beach. Thus plaintiff was in effect aware that he did not know precisely where the bottom was. As in *Garcia,* the fact that visibility was inadequate should have rendered even more obvious to a youth of plaintiff's age the dangers of diving without 'sufficient perception' of what lay ahead. (Emphasis added.)

"Here again as in *Garcia, 'In the light of the undisputed facts now before us, there is no sound basis for concluding that the condition which caused plaintiff's injury should have been recognized as constituting an unreasonably great risk of serious bodily harm which plaintiff was unable to discover or appreciate because of [his] immaturity.' It follows that no special duty toward plaintiff arose by virtue of defendant's ownership of the property. In the absence of such a duty, the case should not be submitted to a jury.* In *Garcia* we reversed a judgment for the plaintiff on the ground that the evidence was insufficient *as a matter of law* to warrant

recovery under the rule governing trespassing children; we held, in effect, that no reasonable trier of fact could have found for the plaintiff on the facts shown. When, as here, the evidence at the close of the plaintiff's case is so palpably insufficient that the trial court determines that no verdict for plaintiff could be sustained, it is the duty of the court to forestall the cost and delay of further proceedings by granting defendant's motion for nonsuit." (Emphasis added.)

The reasoning of *O'Keefe* is equally applicable here.

On the basis of plaintiff's pleadings and the depositions of the parties, there is no sound basis for concluding that the condition which caused plaintiff's injury should have been recognized as constituting an unreasonably great risk of serious bodily harm which plaintiff was unable to discover or appreciate because of his immaturity. There was no special duty owed plaintiff because of either the defendants' ownership or leasehold interest in the property. Nor was there any question of fact regarding gross negligence. In *Oxenger v Ward,* 256 Mich 499, 502–503 (1932), the Court stated:

"In *Denman v Johnston,* 85 Mich 387, 396 [1891], the term 'gross negligence' was held to mean 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them.' "

Defendants in the instant case did not act with reckless disregard of the consequences or without any effort to avoid them.

In the absence of a special duty owed plaintiff and of any factual question as to gross negligence,

the trial court was correct in dismissing Count I
and granting defendants' motion for summary
judgment on Count II. *Heider v Michigan Sugar
Co,* 375 Mich 490 (1965).

I vote to affirm.